(39 App. Div. 379.)

## CHOATE v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department.   March 22, 1899.)

1. STATUTES—REFERENCE TO OTHER STATUTES—CONSTITUTIONALITY.

Laws 1892, c. 466, §§ 1, 2, 8, authorize the city of Buffalo to take lands within a certain district for park purposes, and provide that such lands shall be under the control of the city park commissioners, and be maintained and improved the same as existing parks, as provided by Laws 1891, c. 105, tit. 11 (the city charter), and that the same powers and control conferred by the charter on the city over public parks shall extend to all parks authorized by the act, and that the lands thereby acquired shall vest in the city, and such commissioners shall be entitled to use them as part of the public parks. *Held* not obnoxious to Const. art. 3, § 17, prohibiting the passage of any act making an existing law a part thereof, or applicable, except by inserting such law in the act.

2. MUNICIPAL CORPORATIONS—CITY OF BUFFALO—PARKS—PAYMENT OF EXPENSE —STATUTES.

Laws 1892, c. 466, §§ 1, 2, 8, authorize the city of Buffalo to take for park purposes lands lying partly within and partly without the city, and provide that the park commissioners may forever use such lands as part of the public parks, and that such commissioners and the city shall have the same control and jurisdiction thereover as the city charter gives over existing parks. Section 12 provides that the city shall issue bonds, which, with the proceeds, shall constitute a fund for paying the expense of acquiring title to the lands, and for laying out and improving the same. The charter (section 315) provides that half the expense of constructing parks shall be paid from the general fund, and the other half by special assessment, but it gives the park commissioners no right to acquire additional lands for park purposes. *Held*, that the expense of acquiring and improving the lands could be paid for only as provided in the act, and not as provided in the charter, though all the lands taken were within the city.

Harden, P. J., and Spring, J., dissenting.

Appeal from special term, Erie county.

Action by Rufus M. Choate against the city of Buffalo.   From a judgment for defendant, plaintiff appeals.   Reversed.

In May, 1892, the legislature of this state enacted a statute which was entitled "An act to authorize the city of Buffalo to take and improve lands for park purposes in the Fifth and Eleventh wards of said city and in the town of West Seneca, Erie county." Laws 1892, c. 466. In July of the same year the park commissioners of the city of Buffalo, in virtue of the authority conferred upon them by the above-mentioned act, selected for a parkway a strip of land 100 feet in width and some 3 miles in length, extending from Heacock Park, within the city limits, to the Ridge road, in the adjoining town of West Seneca, and also a circular plot of land, 500 feet in diameter, called "Woodside Circle," which was intersected by the parkway about midway between Heacock Park and the city line. In the month of September following, the common council of the city instituted proceedings to acquire the land thus selected, and commissioners were duly appointed to ascertain and report the compensation to be paid to the owners of the land taken for the parkway. Thereafter the commissioners made and filed their report, which was duly confirmed, and the title to the land selected thereupon vested in the city. No steps were taken to lay out or improve the lands thus taken until December, 1895, when the commissioners prepared plans and specifications, and made an estimate of the cost of improving that portion of the parkway which lay within the city limits. The amount of their estimate was $35,000, one-half of which sum was directed to be paid by general tax, and the other half by local assessment upon property benefited by the improvement. Subsequently the commissioners certified their proceedings to the common council, in pursuance of the requirements of the city charter; and that body directed the city assessors to assess $17,500, one-half of the estimated cost of the proposed im-

provement, upon the lands benefited thereby. An assessment was accordingly made, and the same was completed and confirmed in June, 1896, the plaintiff's share or portion thereof being $2,043.22; and to set aside such assessment this action is brought.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Stephen Lockwood, for appellant.
W. H. Cuddeback, for respondent.

ADAMS, J. The plaintiff rests his contention as to the invalidity of the assessment which he asks to have vacated upon several separate and distinct grounds, only two of which do we deem it necessary to consider upon this review.

Section 1 of chapter 466 of the Laws of 1892, which authorizes the city of Buffalo to take such lands, streets, highways, and turnpikes. in the Fifth and Eleventh wards of the city, and in the town of West Seneca, as may be selected by the park commissioners of that city, for one or more public parks or approaches leading thereto, provides that the land thus taken   "*   *   *   shall be under the control and management of the said park commissioners, and shall be maintained and improved, the same as the existing system of parks and approaches in said city, as provided in and by title eleven of chapter one hundred and five of the Laws of Eighteen Hundred and Ninety-One, and the other provisions of said chapter applicable thereto"; and section 2 of the same act reads as follows, viz.: "The same powers of control, maintenance, construction and jurisdiction which are conferred by title eleven of chapter one hundred and five of the Laws of Eighteen Hundred and Ninety-One, upon the city of Buffalo, over public parks, approaches, streets, roads and avenues in said title mentioned, shall extend and apply to all parks and approaches authorized by this act, and also to all parks and approaches heretofore acquired by said city in said Fifth and Eleventh wards and said town of West Seneca." And the contention is that these two sections are obnoxious to section 17 of article 3 of the constitution of this state, which declares that "no act shall be passed which shall provide that any existing law, or part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law or part thereof, shall be applicable, except by inserting it in such act," in that they provide, in effect, that certain portions of the charter of the city of Buffalo, which are not specifically embraced within the act, shall be applicable thereto. The question which this contention presents is one which has frequently been adjudicated; and, although it arises here in a somewhat novel form, we think it falls within the principle established by these repeated adjudications, which is that a constitutional provision which attempts to regulate the language and forms of expression to be used in legislative enactments is not to be so construed as to embrace cases not fairly within its just purposes or policy, or the evils it was intended to correct, although they may be within its letter, and that when, as in this case, a statute, after granting certain privileges and powers to a municipality, refers to an existing local statute in order to indicate the procedure or the administrative de-

tails necessary for the accomplishment of its purposes, it is not within the inhibitory clause of the constitution to which reference has just been made. People v. Banks, 67 N. Y. 568; In re Union Ferry Co. of Brooklyn, 98 N. Y. 139–158; People v. Lorillard, 135 N. Y. 285, 31 N. E. 1011; Curtin v. Barton, 139 N. Y. 505, 34 N. E. 1093; In re Buffalo Traction Co., 25 App. Div. 447, 49 N. Y. Supp. 1052, affirmed in 155 N. Y. 700, 50 N. E. 1115. The evil which this provision of the constitution was designed to correct was the incorporating into legislative enactments, by a mere reference to some existing statute, of a clause or provision affecting public or private interests to an extent or in a manner not disclosed upon the face of the act itself, and of which the legislators might be utterly ignorant at the time of its enactment. People v. Banks, supra. The act of 1892 (chapter 466), upon the authority of which the proceedings lying at the foundation of this action were set in motion, does not, as we construe it, conceal or obscure its real import; neither does it, by reference to another and existing statute, affect either public or private interests in such a manner as may not have been readily comprehended by the legislature which enacted it. Its object is obviously to confer upon the city of Buffalo the right to take lands for certain purposes. The nature and extent of the power conferred, as well as the duty imposed as a condition of its exercise, are clearly indicated in the language of the act; and the reference to another statute, which is the city charter, is designed simply to confer upon a certain department of the city government the right to control and manage the lands taken, after the proceedings for their condemnation shall have terminated, in the same manner as other lands used for park purposes are controlled and managed. In other words, the statute referred to did not affect or qualify the substance of the later legislation, but it simply regulated and specified the details of its administration. If any doubt existed as to the true construction of the provisions we have been considering, that doubt would be readily removed, we think, upon reading section 8 of the act, which, among other things, provides that:

"The said lands shall vest forever in the city of Buffalo, for the uses and purposes in this act mentioned, and the said park commissioners shall be entitled to enter upon, take possession of and forever use the said lands as an addition to and a part of the public parks, approaches thereto and streets connecting the same which are now under their jurisdiction."

We conclude, therefore, that the first ground upon which the plaintiff rests his contention is inefficient, and shall consequently proceed to the consideration of another ground, which, in our opinion, possesses much greater force.

Section 12 of the act of 1892 provides that for the purpose of paying for lands which may be taken under the preceding sections, as well as for defraying the expense of laying out, improving, and embellishing the same, the bonds of the city, in an amount not exceeding $100,000, shall be issued by the mayor and comptroller from time to time as the same shall be required, and that such bonds, and the proceeds thereof, "shall constitute a fund for paying the costs of the lands taken under provisions of this act and the expense of acquiring

title thereto, and for laying out, improvement and the embellishment thereof." It is not pretended by the defendant that any bonds have been issued for the payment of the lands taken, or that any fund has been created for defraying the expense of laying out, improving, and embellishing the same. On the contrary, it is conceded that resort has been had to section 315 of the city charter, which provides that one-half of the entire expense of opening, grading, paving, or constructing parkways, roads, or approaches shall be paid from the general fund of the city, and that the other half shall be defrayed by local assessment upon the lands adjacent to such approaches, and which the assessors shall determine to be benefited thereby. This action upon the part of the park commissioners was taken upon the theory that by virtue of sections 1, 2, and 8 of chapter 466 of the Laws of 1892, they had "the same powers of control, maintenance, construction and jurisdiction" over the lands acquired by that act as they had over the existing parks and approaches within the city; and it is argued that, inasmuch as the lands which the commissioners are laying out and improving are all within the city limits, the method provided by the charter for defraying the expenses thereof should be followed, and that it would be inequitable and incongruous to adopt the method provided by section 12 of the act of 1892. There would be much force in this contention, if the last-mentioned act simply conferred the powers specified in sections 1 and 2, and was silent as to the manner in which the expense of laying out, improving, and embellishing the lands taken for public parks should be met; for in that case, as we have seen, it might with some propriety be claimed that the method provided by the city charter for defraying such expense was one of the details of administration contemplated by the act, or that the later act was in the nature of a supplement to prior legislative enactments relating to the same subject. But the difficulty with the defendant's position is that the act of 1892 contains within its provisions a complete scheme, not only for acquiring lands for parkway purposes, but also for defraying the expense of converting the lands thus acquired into parks and approaches. And, this being the case, we are unable to see exactly upon what theory the defendant can invoke such provisions of the statute as enable it to acquire lands for a particular purpose, and ignore or disregard such as specify the manner in which the expense of improving and embellishing the same shall be defrayed. We are not unmindful of the fact that title 11 of the defendant's charter, which creates the department of parks, and defines the powers and duties of the park commissioners, also provides a method or plan for defraying certain expenses which may be incurred by such commissioners in the performance of their official duties, and that that method is the one which has been resorted to by the defendant in the present instance. Neither do we overlook the reason assigned by the learned counsel for adopting that method rather than the one provided by the act of 1892, but that reason seems to us an inadequate one. As has just been remarked, the act of 1892 provides, not only how lands shall be taken for park purposes, but it likewise directs that the bonds authorized by section 12, or their proceeds,

shall constitute a fund "for paying the cost of the lands taken * * * and for the laying out, improvement and embellishment thereof." This language is clear and explicit, and there is but one way of evading its plain import, which is by adopting the theory of the learned counsel, that a literal construction thereof would bring the section into direct conflict with certain provisions of the defendant's charter, and thus lead to a result which would be antagonistic to the legislative intent. That the rule of construction here invoked does exist is not to be denied; for, "* * * where it is apparent that a strict construction of a statute would defeat the main purpose or object, not only of the statute, but of other legislative enactments which relate to the same subject, and which have been enacted in pursuance of and according to a general purpose of accomplishing a particular result, such interpretation should not be upheld, as it would be absurd to say that the lawmakers designed to secure a result which will be antagonistic to their plain and clear intention." People v. Lacombe, 99 N. Y. 43–50, 1 N. E. 601. This rule, however, does not go to the extent of controlling the plain language of a statute by any supposed policy of previous enactments (Goodrich v. Russell, 42 N. Y. 177), and therefore we think it inapplicable to the present case. A careful reading of title 11 of the defendant's charter makes it obvious to our mind that it simply confers upon the park commissioners the right to oversee or superintend the parks and approaches of the city already in existence, and, as an incident thereto, to lay out and regulate the same. It does not confer upon them the power to acquire additional lands for park purposes; neither does it provide for any way of paying for lands thus acquired; and it certainly can have no relation to lands lying outside of the city limits. It cannot, therefore, in our opinion, be regarded as indicating an intent at all antagonistic to, or which will be defeated by a literal interpretation of, a subsequent statute, obviously designed to meet peculiar conditions, and which contains within its provisions a perfect and complete system whereby the object sought may be accomplished,

These views lead to the conclusion that the plaintiff is correct in his contention that the local assessment complained of is invalid, and should for that reason be set aside.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except HARDIN, P. J., and SPRING, J., who dissent.

SPRING, J. (dissenting). Prior to the enactment of chapter 466 of the Laws of 1892, the charter of the city of Buffalo, which is chapter 105 of the Laws of 1891, vested in the park commissioners the control over the parkways and approaches in that city. Title 11 of the revised city charter is devoted exclusively to the department of parks, and is intended to provide a uniform scheme for the acquisition of the lands necessary for these parks and parkways, for the management thereof by the commissioners, and for providing means to make effective their authority in the embellishment and improvement of the property intrusted to these officials. There are two or

three principles ingrafted in this title to which I will advert, as they may serve to illustrate my view of the case.

The lands used in the parks, parkways, and approaches are purchased by the city, after the propriety of acquiring the same has been determined upon in the way pointed out in the statute. The city then pays one-half of the expenses incurred in the improvement and embellishment of the lands thus obtained; and the owners of the premises benefited thereby, the other half. Section 315 of the charter. This conforms to the general mode of procedure in making local improvements, that a moiety of the burden shall be borne by the landowners who derive direct benefit therefrom. The expense thus imposed upon the city has often been met by the issue of bonds, under the direction of its common council. City Charter, tit. 2, c. 1, § 14; Id. tit. 4, § 105. Chapter 466 of the Laws of 1892 was enacted to enable the park commissioners to acquire and improve lands in the Fifth and Eleventh wards of the city, and in the adjacent town of West Seneca. They already possessed plenary power in the wards mentioned, but their jurisdiction was limited to the city of Buffalo; and the primary purpose of this act was to extend their authority, to enable them to obtain the lands outside which were deemed essential to complete the project contemplated by the act. The plan was to construct a parkway, 150 feet in width and 3 miles in length, extending from Heacock Park, in the city, to the Ridge road, in the town of West Seneca, together with a circular park, of about 500 feet in diameter, to be also in the city, and which was to be intersected by this parkway. The statute provided in detail the manner for the acquisition of this land. All of this may have been deemed prudent, as a portion of the lands, as I have stated, was outside the city of Buffalo, and the parties whose lands were to be appropriated in the town of West Seneca may not have been familiar with the provisions of the city charter; and, if the mode of procedure was embodied in the act itself, it would readily be within their apprehension. That it was not designed to include the land acquired by virtue of this enactment within the dominion of the park commissioners, in any other way than provided by the charter is quite patent. The first section of the act unmistakably brings the land to be procured under the act within the park system of the city, and under the control and management of the park commissioners; and that provides that the same "shall be maintained and improved, the same as the existing system of parks and approaches in said city, as provided in and by title eleven of chapter one hundred and five of the Laws of Eighteen Hundred and Ninety-One, and the other provisions of said chapter applicable thereto." Section 2, with some reiteration, further provides that "the same powers of control, maintenance, construction and jurisdiction" vested in the commissioners by title 11, referred to, shall extend to all the parks and approaches authorized by the act in question. We have, therefore, this act of the legislature, passed to enable the city to secure for park purposes land outside its limits, and defining the manner of its acquisition, but without designing to enlarge or restrict the authority of the commissioners already existing, and without in any way making the

execution of this act independent or isolated from the uniform mode of procedure in vogue to embellish and improve the lands to be procured.

It is claimed that section 12 of this act, however, involves a departure from the unvarying method laid down in the charter. That section provides for the issuing of the bonds of the city, to pay for the lands to be taken, "and for the purpose of laying out, improving and embellishing the same." Again: "And the said bonds and the proceeds of the sale thereof, shall constitute the fund for paying the cost of the lands taken, under the provisions of this act, and the expenses of acquiring the title thereto, and for the laying out, improvement and the embellishment thereof." The contention is that the import of this section is to make the city responsible, not alone for the purchase of the lands originally, but for all the improvements and embellishments which are made under the direction of the park commissioners; that is, that it is in contravention of the charter, and must control. To paraphrase: While the lawmakers were careful to provide that this act was in no sense to infringe upon the provisions of the charter, that, in the important part relating to the payment for improvements, there was to be a radical departure from the policy incorporated in the fundamental law governing the city. I cannot assent to this proposition. The direction as to the payment for the lands, while not indispensable, may have been advisable, to assure the owners of the land in West Seneca that the city was their paymaster. Whatever may have been the object, there is nothing in the provision empowering the issue of bonds by the city to pay for the purchase or improvements that is in conflict with the obligation contained in the charter, resting upon adjacent owners, to contribute towards these improvements. The city had to pay for this land, and it was obliged to pay one-half of the expenses incurred in its embellishment, and the act simply provided the manner in which it should be done. This section is devoted to providing the manner in which the city shall raise the money, and it is not sought to trench upon any previous regulation or practice, and is not dealing with the obligations of individuals. If a new departure had been intended, the act would not have circumspectly provided, in its very inception, that the provisions in force were to remain unimpaired in their application to the lands obtained in pursuance of the act. If, after this cautious incorporation of the mode of procedure in the present act, it had designed to adopt a course in pointed divergence from it, we certainly would expect to find explicit warrant for the design, and not have it depend solely upon implication. It is not inconsistent with the requirement that the city shall pay for the land and improvements by issuing bonds, to read in the act that this referred to the obligations manifestly imposed upon the city, and was not designed to relieve the persons benefited by the improvements from paying their just proportion.

In seeking for a true interpretation of a statute, we must consider its probable and ulterior effect. The Fifth and Eleventh wards comprise a large part of the city of Buffalo, with much undeveloped territory. If the act in question is to relieve all the owners of land in

that large section from contributing to street and parkway improvements of this kind, then the legislation will result invidiously against citizens residing elsewhere in the city. This is a glaring oversight, as well as unjust, and the construction which accomplishes this rests upon inference. To me, the more reasonable construction is that which makes the act a symmetrical whole; that gives effect to the first and second sections by putting the scheme in harmony with the plan already in general operation, and by construing section 12 as referring solely to the manner in which the city of Buffalo is to raise the money to make effective the project, without changing the terms of the charter so far as it relates to the rights of individuals.

The counsel for the appellant raises several other objections to the act, and to the mode of procedure under it, but they are well disposed of in the opinion of Mr. Justice ADAMS.

The judgment should be affirmed, with costs.

HARDIN, P. J., concurs.