THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SAMUEL DAVIS, Appellant.

*Sanitary Code — special permit to keep poultry in New York city — the statutes validating the Sanitary Code are not in violation of section 17 of article 3 of the Constitution — nature of the Code and the source of its validity.*

Section 79 of the Sanitary Code, which prohibits the keeping or killing of poultry in any place " within the built-up portions of the city of New York, without a special permit, in writing, from the department of health, and subject to the conditions thereof," is valid.

While it is probable that there is no specific legislative enactment empowering the health department to regulate the keeping and killing of poultry in the city of New York by means of special permits, the fact that it has such power follows from a consideration of the extended powers conferred upon the health department from time to time, the general practice of issuing permits in this and other cognate matters, the express recognition by the Legislature of the binding authority of the ordinances which provide for such permits, the adoption, under legislative authority, of the Sanitary Code providing for such permits in numerous cases, the growth of such Code and its ratification from time to time by legislative enactment.

The statutes declaring the Sanitary Code to be binding and in force in the city of New York do not violate section 17 of article 3 of the Constitution which forbids the passing of any act " which shall provide that any *existing law,* or any part thereof, shall be made or deemed a part of said act, or which shall enact that any *existing law,* or part thereof, shall be applicable, except by inserting it in such act," as, when declared to be binding and in force, the Sanitary Code was not an existing law of the State within the meaning of that section of the Constitution and it was not by any act of the Legislature declared applicable to, or made a part of, such act.

The Sanitary Code is a mere compilation of local laws and ordinances and derives its validity from the extent and purpose of the broad powers conferred upon its authors and the intent with which they have been conferred, as indicated by repeated legislative ratification, as well as from the force and effect to be ascribed to such ratification.

APPEAL by the defendant, Samuel Davis, from a judgment of the Court of Special Sessions of the city of New York, entered on the 23d day of July, 1902, convicting the defendant of violating section 79 of the Sanitary Code of the health department of the city of New York.

*James Moffett* [*Samuel H. Sternberg* with him on the brief], for the appellant.

*James McKeen,* for the respondent.

HIRSCHBERG, J. :

The section of the Sanitary Code under which the appellant has been convicted provides as follows : " Sec. 79. That no live chickens, geese, ducks, or other fowls shall be brought into or kept or held or offered for sale, or killed in any yard, area, cellar, coop, building, premises or part thereof, or in any public market or on any sidewalk or other place within the built up portions of the city of New York, without a special permit, in writing, from the Department of Health, and subject to the conditions thereof."

Under this section the appellant has been convicted for the keeping and killing of chickens without a special permit. The learned counsel for the appellant do not claim that the conviction in this case was erroneous upon the facts, but contend that the provision of the Sanitary Code is invalid in that no lawful authority exists in the health department to grant permits for the keeping and killing of chickens, and that the provision of the section in question in reference to a special permit invalidates the section as a penal ordinance. The authority for this contention is the case of *Village of Flushing* v. *Carraher* (87 Hun, 63), and if that case is controlling, the contention must prevail.

That case arose, however, under the Public Health Law of the State (Laws of 1893, chap. 661), and the powers of the local board of health were limited by the act, *first*, to the making and publishing such orders and regulations as they might deem necessary and proper for the preservation of life and health and the execution and enforcement of the Public Health Law in the municipality, and *secondly*, to the making, without publication thereof, such orders and regulations for the suppression of nuisances, and concerning other matters in their judgment detrimental to the public health in special or individual cases not of general application. The ordinance violated provided that " No cows shall be kept within two hundred (200) feet of any dwelling in the village of Flushing without a special permit obtained from the board of health," and the court held that the power conferred upon the board by the general act did not include the right to grant permits in special cases, but could only be exercised by the passage of general ordinances for the government and control of every person within the jurisdiction. Mr. Justice CULLEN said (p. 65): " The board of health, by

the ordinance under review, has not forbidden the keeping of cows within 200 feet of a dwelling house, but so keeping cows without a special permit. In other words, the board has taken to itself the power of licensing cow stables. No such power has been granted it by the Legislature. If the matter is such that a general ordinance can be passed upon the subject, then such an ordinance should be enacted, and all will be bound by it." It was further pointed out in the opinion that all necessary regulation and control over the subject under consideration could be accomplished by general enactments and by special orders in individual cases where the act sought to be suppressed amounted to the maintenance of a nuisance.

That the health authorities of the city of New York have for a long period of time exercised and regulated by ordinance the right of granting permits of the character now questioned is practically undisputable. While it is probable that no specific legislative authority exists for the regulation of the keeping and killing of poultry in the city of New York by limiting the act to such times and places as the health department may see fit to sanction by permit, the whole tenor and scope of the laws applicable to that city and the history of the legislation upon the general subject of the public health clearly indicate that such is the meaning and intent of the law, and that the power has been and is conferred upon the local authorities of confining the keeping and slaughtering of poultry within the thickly-settled sections to such places as the health officials in the exercise of their judgment and discretion may find to be possessed of sanitary adjuncts and surroundings consistent with a due regard for the public health and cleanliness. This view results from a consideration of the more extended powers conferred upon the department in the city from time to time, the general practice of issuing permits in this and other cognate matters which has existed for a long period with the legislative sanction, the express recognition by the Legislature of the binding authority of the ordinances which provide for such permits, and the creation and growth of the Sanitary Code, also providing for such permits in numerous cases, adopted under the legislative authority and from time to time ratified and confirmed by legislative enactment.

The former metropolitan health district, including among other

localities the then cities of New York and Brooklyn, was created by chapter 74 of the Laws of 1866, and upon the board of health then organized powers were conferred of the most ample character, which have since been preserved by successive enactments and are expressly given anew to the present board by section 1168 of the Greater New York charter (Laws of 1897, chap. 378), and by the amended charter (Laws of 1901, chap. 466). The intervening legislation served rather to extend than to curtail those powers, and it will be seen that in defining them care has been taken to include not only a general summary of authority, but to adopt and legalize the acts by which such power and authority have been customarily exercised. In declaring the validity of the original act in the case of *Metropolitan Board of Health* v. *Heister* (37 N. Y. 661), HUNT, Ch. J., said (p. 666): " As early as 1796, and by repeated statutes, from that time down to the adoption of the Revised Statutes, in 1830, the duty of attending to the health of the city, to cases of infectious disease, to vessels from unhealthy ports, to *establishing and regulating slaughter-houses*, has been given to, and exercised by, the mayor of the city of New York, the mayor, aldermen and commonalty thereof, commissioners of health, health wardens for the city, or some other local officers of that city. (3 Greenl. ed. Laws, ch. 38, p. 305 ;* 1 R. L. 1813 ;† Laws 1850, ch. 275.)"

By section 12 of the statute of 1866 under consideration in that case, and as I have said in operation now, the metropolitan board of health was given the power to exercise exclusively " the authority, duty and powers, whether given by any law, or *by any ordinance made thereunder* heretofore (for the purpose of preserving or protecting life or health, or preventing disease) conferred upon or now belonging to, or *being exercised* by the Board of Health, or the Board of Public Health of or in the city of New York, or of or in the city of Brooklyn, * * *. And the aforesaid power, duty and authority hereby transferred to and conferred upon said Board shall be held to *include all the power*, duty and authority given, or conferred or *purporting* to be given or to be conferred to or upon any person, officer or board, *in or by any ordinance* contained or purporting to be contained in the first ten chapters of ordinances, being numbered from one to ten inclusive in a compilation of ' Laws and

---

* Laws of 1796, chap. 38 [REP.   † R. L. 1813, chap. 37, vol. 2, p. 524 [REP.

Ordinances relative to the preservation of the Public Health in the city of New York,' and purporting to be published under the authority and by the direction of the Mayor and Commissioners of Health of said city, in the year one thousand eight hundred and sixty, and by any existing amendments and additions thereto. * * * And said board shall also possess * * * all the power and authority for the protection of life or health, or the care or preservation of health, or persons diseased or threatened therewith, conferred by any law *or ordinance* relating to any part of said district, * * * nor shall anything in the aforesaid laws or ordinances contained be construed as a limitation of any power in this bill elsewhere given to the said Board, or to limit the penalties and expenses it may enforce or collect; and all the power *recited or given by said ordinances* shall belong wholly to said Board, who may exercise the same without the advice, assent or co-operation of any municipal board or officer, and *in any manner* not inconsistent with the other sections of this law, without being limited to *the means* or by the *procedure* in said ordinances stated."

By section 20 of the same act the board was authorized to " enact such by-laws, rules and regulations as it may deem advisable, in harmony with the provisions and purposes of this act, and not inconsistent with the Constitution or laws of this State, for the regulation of the action of said Board, its officers and agents, in the discharge of its and their duties, and for the protection of life and public health; and, from time to time, may alter, annul or amend the same."

The health department of the city of New York, which succeeded the metropolitan board of health by virtue of the city charter of 1873 (Laws of 1873, chap. 335, § 82, as amd. by Laws of 1873, chap. 757, § 12), acquired the same general powers as its predecessor, if anything rather extended and enlarged. (See *Health Department* v. *Knoll,* 70 N. Y. 530, 533.) The Sanitary Code was first enacted pursuant to the 20th section of chapter 74 of the Laws of 1866 (*supra*), and the 10th section of chapter 956 of the Laws of 1867, under the metropolitan district system, and it has ever since been recognized and regarded as an authoritative compilation of local regulations or sanitary ordinances govern-

ing the administration of the health laws, having the force of law in respect to all matters contained in it which are within the powers and jurisdiction of the health department. Referring to this Code in the case last cited, Judge Andrews said (p. 534): " The Code enacted by the metropolitan board of health, so far as it was applicable to the city of New York, *has been continued in force* by subsequent legislation, subject to the powers vested in the present health department of the city to add to or amend the same. It now consists of 188 sections, and embraces regulations on a general variety of subjects connected with the protection of the public health. It prescribes the duties of individuals in the use and care of their property and tenements; regulates the construction, ventilation, and drainage of buildings and lands; provides securities against the spread of infectious and contagious diseases; in short, it is the *permanent code of health laws,* covering all the ordinary contingencies and circumstances, which require the intervention of public authority for the security of life and health. The violation of this Code is made, by the act of 1873,* a misdemeanor, and subjects the offending party to the penalty therein prescribed."

The Sanitary Code was re-enacted under the statute of 1873, and was thereafter amended from time to time by the health department. On November 20, 1877, the provision under which the appellant has been convicted was adopted, substantially in its present form, and containing the prohibition which is now claimed to be invalid against the keeping or killing of poultry within the built-up portions of the city without a permit in writing from the health department. With that provision contained in it and also numerous other provisions for the granting of special permits, this Code was ratified and confirmed by the Legislature by chapter 135 of the Laws of 1880, entitled " An Act to simplify the proof of the Sanitary Code in the city of New York;" and by which act it was expressly declared that such Code shall be " deemed *in full force and operative* in the city of New York, save as duly modified or repealed by the said board of health."

By section 575 of the Consolidation Act (Laws of 1882, chap. 410) the Sanitary Code was again " declared to be *binding and in force* in said city," and to continue to be binding and in force

---

* Section 82. — [Rep.

excepting as the board of health may from time to time alter, amend or annul it, in which respects ample power was conferred upon the board. The same provisions are contained with some amplification in " The Greater New York Charter" (Laws of 1897, chap. 378), section 1172, and in the amended charter (Laws of 1901, chap. 466); while in the latter act the provisions of the Code in reference to the keeping and slaughtering of fowls is expressly recognized by the legislative qualification that so much of section 1172 (*supra*) " as declares the Sanitary Code binding and in force in the city of New York shall not be construed as limiting the storage of fertilizers or the *keeping and slaughtering of fowls*, cattle and other domestic animals upon premises used for farming in unimproved sections of the city, or as forbidding the ordinary use of country roads in driving such fowls, cattle and other domestic animals."

I do not think the provisions of section 17 of article 3 of the Constitution are applicable to the legislation under consideration. That section forbids the passing of any act by the Legislature " which shall provide that any *existing law*, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any *existing law*, or part thereof, shall be applicable, except by inserting it in such act." The Sanitary Code, when declared. to be binding and in force, was not an existing law of the State within the meaning of that section of the Constitution, and it was not by any act of the Legislature declared applicable to, or made or deemed a part of, such act. It is, as has been said, a mere compilation of local laws and ordinances, and whether the view taken of this section of the Constitution be sound or otherwise, the Code derives its validity from the extent and purpose of the broad powers conferred upon its authors, and the intent with which they have been conferred as indicated by repeated legislative ratification as well as from the force and effect to be ascribed to such ratification.

The judgment of conviction should be affirmed.

GOODRICH, P. J., BARTLETT, WOODWARD and JENKS, JJ., concurred.

Judgment of conviction affirmed.