Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim for Compensation under the Workmen's Compensation Law, on Account of the Death of WILLIAM WATKINSON, v. HOTEL PENNSYLVANIA, Employer, and THE TRAVELERS INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, February 28, 1921.

**Workmen's Compensation Law — accidental injury inferred from known facts — body of bellboy found at bottom of elevator shaft — constitutional law — Workmen's Compensation Law, section 15, subdivision 8, and Education Law, article 47, providing for raising and administering of rehabilitation fund are valid.**

The decedent, who was a bellboy in a hotel, was missed during his tour of duty and was later found dead at the bottom of an elevator shaft. On all the evidence, *held*, that the decedent's death was caused by an injury which arose out of and in the course of his employment, and that from the known facts it may be inferred that said injury was accidental.

Subdivision 8, section 15, of the Workmen's Compensation Law, providing that in the case of the death of an employee leaving no one entitled to compensation the sum of $900 shall be paid to the State Treasurer for the establishment of a rehabilitation fund, is valid, and the sum fixed is not so large as to be considered arbitrary and extravagant and an abuse of power.

Article 47 of the Education Law, added by chapter 760 of the Laws of 1920, provides a complete and valid law for raising a rehabilitation fund in this State and administering that fund for the purposes therein declared; section 1210 of said article provides for acceptance and administration of the Federal fund only in accordance with the act of Congress and does not make any existing law of this State or of the United States a part thereof, nor does it enact that any existing law shall be applicable within the prohibition of the State Constitution.

H. T. KELLOGG, J., dissents.

APPEAL by the defendants, Hotel Pennsylvania and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 22d day of July, 1920.

The award was made to the State Treasurer upon the ground that there were no persons surviving entitled to compensation.

*Benjamin C. Loder* [*E. C. Sherwood* and *William B. Davis* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel, and *Bernard L. Shientag,* counsel for State Industrial Commission], for the respondents.

VAN KIRK, J.:

The evidence in this case discloses that the deceased Watkinson was employed at the Hotel Pennsylvania, having more than fifty rooms, as a bellboy, working from twelve midnight to seven A. M. This was a hazardous employment under the Workmen's Compensation Law. (See § 2, group 34, as amd. by Laws of 1917, chap. 705.) His duties were to attend guests to rooms and answer calls from rooms. He was engaged in his work on the morning of May 23, 1920. He had answered a call to room 1529, returned his card for this call and taken another card for room 824. Evidently this latter call had not been filled; the hour stamped on this card was twelve-fifty. Early in the morning of May twenty-third search for Watkinson was instituted. Mr. De Mott went to the Pullman restaurant and was there told by the cashier that Watkinson had been there about one-thirty in the morning and purchased two sandwiches. Sometimes late at night bellboys went outside to get food for guests. Passenger elevator shaft No. 8 was usually closed about one or one-thirty in the morning and remained closed till six-thirty or seven A. M., when it was the custom for the elevator men to take the daily papers to the several floors and leave them for the bellboys to distribute to the several rooms. The bellboys usually rode from floor to floor in the elevators and sometimes they used elevators without permission. In the morning, when the search was instituted for Watkinson, it is said the car was at the fourth floor. Below the main floor (at which the car was usually left when the elevator was closed) is a basement, where there is a door into the elevator shaft. About one P. M. of May twenty-third Watkinson's body was found at the bottom of No. 8 shaft, with a mark on his head, showing a blow. The car in shaft 8 had been running since morning. In some

manner, not disclosed by the evidence, he fell down this shaft. He could not have been in the car, but must have gotten into the shaft below the car. There was no way to get into the shaft except through a door leading into it from one of the floors.

We have in the evidence, from established facts and fair inference, the framework of a valid claim under the Workmen's Compensation Law. It appears that Watkinson met his death in the course of his employment; that the injury arose out of his employment; and it is a fair inference, from the known facts, that his was an accidental injury. The award was justified.

The award is $100 for funeral expenses and to the State Treasurer of the State of New York (1) $100 pursuant to the provisions of subdivision 7 of section 15 of the Workmen's Compensation Law (added by Laws of 1916, chap. 622, as amd. by Laws of 1917, chap. 705); (2) $900 pursuant to the provisions of subdivision 8 of section 15 of the Workmen's Compensation Law (as added by Laws of 1920, chap. 760).

No question is raised as to the award for funeral expenses, or the award under subdivision 7 of section 15, which is valid. (*Edsall* v. *Edsall*, 179 App. Div. 481, 485; affd., 222 N. Y. 651; *Matter of State Industrial Commission* v. *Newman*, Id. 363; *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 235; *New York Central R. R. Co.* v. *White*, Id. 188.)

The $900 award under subdivision 8 of section 15 is attacked upon two grounds:

(1) The Rehabilitation Law conflicts with article 3 of the State Constitution (§§ 1, 17) and subdivision 8 of section 15 of the Workmen's Compensation Law falls with it.

(2) Subdivision 8 of section 15 conflicts with article 1, section 6, of the State Constitution and with section 1 of the Fourteenth Amendment of the Federal Constitution.

Considering the second criticism first:

Article 1, section 6, of the State Constitution is the Bill of Rights, and the due process of law clause and the just compensation clause are invoked. Under section 1 of the Fourteenth Amendment of the Federal Constitution the equal protection law clause is invoked. No question is open under the provisions of the State and Federal Consti-

tutions invoked after the decisions above cited (particularly in *Mountain Timber Co.* v. *Washington* and *New York Central R. R. Co.* v. *White*), except whether or not the amount fixed in the statute is unfair or unreasonable. There may be an extravagant and arbitrary amount fixed. Is the amount here fixed such? All reasonable presumptions are in favor of the validity of the act, and the burden of proof and argument is upon those who seek to overthrow it. (*Mountain Timber Co.* v. *Washington, supra,* 237.) The sum fixed in the statute is not great, is not larger than could readily be awarded, had the deceased left dependents. There is no evidence in this case showing that the sum fixed is so extravagant or arbitrary as to constitute an abuse of power. The court cannot say that $900 is an unfair or unreasonable sum for the purposes intended.

As to the first criticism:

Subdivision 8 of section 15 reads: " An employee, who as a result of injury is or may be expected to be totally or partially incapacitated for a remunerative occupation and who, under the direction of the State Board of Vocational Education is being rendered fit to engage in a remunerative occupation, shall receive additional compensation necessary for his maintenance; but such additional compensation shall not exceed ten dollars a week. The expense shall be paid out of special fund created in the following manner: The insurance carrier shall pay to the State Treasurer for every case of injury causing death, in which there are no persons entitled to compensation, the sum of nine hundred dollars. The State Treasurer shall be the custodian of this special fund and the Industrial Commission shall direct the distribution thereof."

This subdivision was added on May 13, 1920, by chapter 760 of the Laws of 1920. The fund so provided for is payable to an employee who has been injured and totally or partially incapacitated for a remunerative occupation, and who is entitled to compensation under the Workmen's Compensation Law only.

Section 1 of article 3 of the State Constitution is: " The legislative power of this State shall be vested in the Senate and Assembly." And section 17 is: " No act shall be passed which shall provide that any existing law, or any part thereof, shall

be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act."

Chapter 760 of the Laws of 1920 is entitled: "An act to accept the provisions of any law of the United States making an appropriation to the States for the rehabilitation of physically handicapped persons, to amend the Workmen's Compensation Law, in relation to the maintenance of employees undergoing rehabilitation, and to amend the Education Law, in relation to the rehabilitation of physically handicapped persons, and making an appropriation therefor."

The 1st section enacts subdivision 8 of section 15 of the Workmen's Compensation Law as above quoted. The 2d section amends the Education Law and enacts a new article 47, known as the Rehabilitation Law, being sections 1200 to 1210. It creates an advisory commission for the rehabilitation of physically handicapped persons, as defined therein, it enumerates the powers of the commission in section 1204, fixes duties upon the Industrial Commission and the Department of Health and the Department of Education and authorizes the latter department to receive gifts and donations for the purposes of this article, which may be offered unconditionally. Section 1210 is as follows:

"Acceptance of law of the United States. The State of New York, through its legislative authority:

"1. Accepts the provisions of any law of the United States making appropriation to be apportioned among the States for vocational rehabilitation of disabled persons;

"2. Empowers and directs the Board of Regents of the University, hereby designated the New York State Board for Vocational Education, to co-operate with such agency as the Federal government shall designate to carry out the purposes of such law;

"3. Appoints the State Treasurer as custodian of all money given to the State by the United States under the authority of such law, and such money shall be paid out in the manner provided by such act for the purposes therein specified;

"4. Authorizes the Board of Regents of the University as the State Board for Vocational Education and the Industrial Commission to formulate a plan of co-operation in accordance

with this act, which shall be effective when approved by the Governor of the State."

The attack upon this law is formulated in this manner: The whole chapter (the Rehabilitation Law) is built around section 1210. This is void because based on the acceptance of the Federal statute and the whole act falls with section 1210.

This position is untenable. In the sections of the chapter prior to section 1210, funds in this State are provided. The uses to which these funds are put are defined and a commission is appointed for administering these funds in compliance with the instructions in the statute. Here is a complete act entirely separable from section 1210, maintainable and operative without it, and I can conceive no reason why the Legislature would not have wished the statute to be enforced with section 1210 rejected. (*People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48, 59.) Under these sections the award as made in this action may be lawfully used.

We turn then to section 1210. Legislation was pending in Congress, which subsequently and on June 2, 1920, was duly enacted, whereby the Federal government made provision for vocational rehabilitation of persons disabled in industry or in any legitimate occupation and their return to civil employment, and appropriated funds to be apportioned among the States to that end. (See 41 U. S. Stat. at Large, 735, chap. 219.) By section 1210 of our Education Law the law for the use and distribution of those funds only is accepted. It does not accept the Federal law for distributing any of the State funds, and it delegates to the board it names administrative powers only. It is not a surrender of the legislative power of this State to any outside legislative body. The act is no more than an acceptance of the fund and then providing a board or body which may receive the Federal fund and co-operate with the Federal authorities, so that this Federal fund may be available to the State of New York and its citizens to be used, as it must be, in the manner required by the government which supplied the funds. The Rehabilitation Law is the legislative act of the Senate and Assembly of the State of New York, and it does not make any existing law of this State (or of the United States) a part thereof, nor does it enact that any existing law shall be applicable within the prohibition of article 3 of

our State Constitution.  The purpose of section 17 of article 3 of our Constitution is stated in *People ex rel. Commissioners* v. *Banks* (67 N. Y. 568, 575): " The evil in view in adopting this provision of the Constitution was the incorporating into acts of the Legislature by reference to other statutes, of clauses and provisions of which the Legislature might be ignorant, and which, affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law, which would not receive the sanction of the Legislature if fully understood."  In *Choate* v. *City of Buffalo* (39 App. Div. 379), chapter 466 of the Laws of 1892 was considered, which provided that land taken by the city of Buffalo for public parks, " shall be under the control and management of the said park commissioners, and shall be maintained and improved, the same as the existing system of parks and approaches in said city, as provided in and by title eleven of chapter one hundred and five of the laws of eighteen hundred and ninety-one, and the other provisions of said chapter applicable thereto."  And further provided: " The same powers of control, maintenance, construction and jurisdiction, which are conferred by title eleven of chapter one hundred and five of the laws of eighteen hundred and ninety-one, upon the city of Buffalo  *  *  *, over public parks, approaches, streets, roads and avenues in said title mentioned, shall extend and apply to all parks and approaches authorized by this act."  The court held that these provisions were not in conflict with section 17 of article 3 of the Constitution of this State.  In *People* v. *Davis* (78 App. Div. 570) the court held that a statute declaring the Sanitary Code to be binding and in force in the city of New York does not violate this section of the Constitution; and, on page 576, said: " The Sanitary Code, when declared to be binding and in force, was not an existing law of the State within the meaning of that section of the Constitution, and it was not by any act of the Legislature declared applicable to, or made or deemed a part of, such act."

The Federal government has distributed funds to the States before (Land Grant Act of 1862, 12 U. S. Stat. at Large, 503, chap. 130), and our Legislature has provided for their use by Cornell University.  (Laws of 1863, chap. 20;

Laws of 1865, chap. 585; Laws of 1880, chap. 317; Laws of 1891, chap. 56; Education Law, §§ 1030–1039, as amd.)*

We conclude that chapter 760 of the Laws of 1920, without section 1210 of the Education Law, provides a complete and valid law for raising a rehabilitation fund in this State and administering that fund for the purposes therein declared; that section 1210 provides for acceptance and administration of the Federal fund only, in accordance with the act of Congress; and that such provision does not offend against our Constitution, and is valid.

The award should be affirmed.

All concur, except H. T. KELLOGG, J., dissenting.

Award affirmed.

---

* See, also, State Finance Law, § 93, as re num. from § 97 by Laws of 1911, chap. 634.— [REP.