THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MAURICE BRONGOFSKY, Defendant.

City Magistrate's Court of New York, Borough of Bronx, December 1, 1943.

*Nathan Immerman* for defendant.

*Ignatius M. Wilkinson, Corporation Counsel (Charles C. Weinstein* and *Silas S. Lippman* of counsel), for plaintiff.

LEVIS, C. M.   The complaint in this proceeding charges the defendant with a violation of the New York State War Emergency Act (L. 1942, ch. 544, as amd.), in that he offered to sell meats at a price higher than the ceiling prices fixed by the Office of Price Administration, a Federal agency.   The State War Council, created by the War Emergency Act, by resolution (Resolution No. 294, adopted April 28, 1943, published May 8, 1943, in the Official Bulletin of N. Y. S. War Council, Vol. 2, No. 20, p. 222) adopted the Price Regulations of the Office of Price Administration, and the defendant is charged with what the Act denominates as " an infraction " in demanding a price higher than the Federal ceiling price.

The State statute creates " a temporary state commission to be known as the New York state war council for the general purpose of aiding the war effort ". In subdivision 6 of section 7 the Council is empowered " To adopt and promulgate in this state any rationing, freezing, price fixing, or other order or regulation imposed by authority of the federal government; and to adopt rules and issue orders with respect to the enforcement of any such rationing, freezing, price fixing or other order or regulation."

Subdivision 6 of section 101 (added L. 1943, ch. 171) provides that the violation or disobedience of any duly promulgated rule, regulation or order makes one guilty of an infraction, and section 102 subjects any person convicted of an infraction to a fine of not more than twenty-five dollars or five days' imprisonment, or both.

An infraction is defined in subdivision (d) of section 100 of the statute (amd. L. 1943, ch. 171) as follows: " ' Infraction ' shall mean a violation of any law or duly promulgated rule, regulation or order (1) which is expressly declared to be an infraction by this act, or (2) which is not expressly declared by this act to be either a misdemeanor or an infraction but where a penalty or other punishment is prescribed by this act. An infraction is not a crime and the penalty or punishment imposed therefor shall not be deemed for any purpose a penal or criminal penalty or punishment, and shall not impose any disability upon or affect or impair the credibility as a witness, or otherwise, of any person convicted thereof. For the purpose of conferring jurisdiction upon courts and judicial officers generally, subject to the provisions of section one hundred one-a of this act, such infractions shall be deemed misdemeanors and for such purpose only all provisions of law relating to misdemeanors shall apply to infractions."

The defendant attacks the constitutionality of the Act and the regulation of the State War Council made pursuant to the Act. It is urged that the State Legislature has delegated to an administrative board the power to make regulations, the violation of which is a misdemeanor; and accordingly there is an improper delegation of legislative power.

It is clear that section 1 of article III of the State Constitution vested the legislative power in the Senate and the Assembly and that the power to define and declare crimes and public offenses and to provide for punishment is solely a legislative power.

The quotations cited above from the Act show, however, that the Act has not delegated either the power of declaring the crime or the punishment thereof to the War Council. The Legislature has defined the infraction as the violation or disobedience of any duly promulgated rule (§ 101, subd. 6). The Legislature, itself, has provided the penalty (§ 102). The true rule is laid down in *People* v. *Grant* (242 App. Div. 310, affd. 267 N. Y. 508): "The Legislature may delegate to administrative agencies power to make reasonable rules and regulations for administrative purposes and give to such rules and regulations the force and effect of law. (*United States* v. *Grimaud,* 220 U. S. 506.) In so doing it is providing for the administration of the laws which the Legislature itself has enacted. It may declare the violation of these rules to be a crime and provide the punishment for their violation. In so doing it is exercising the legislative power committed to its discretion by the People through the Constitution. The substantive portion of the legislation is found in that part of the statute which declares the violation of the rules and regulations to be a crime and prescribes the punishment for such violation. (*Brodbine* v. *Inhabitants of Revere,* 182 Mass. 598, 66 N. E. 607.)"

The defendant relies strongly on the case of *People* v. *Ryan* (267 N. Y. 133). The Alcoholic Beverage Control Law, there considered, provided that a "Violation by any person of any rule of the state board shall be a misdemeanor *if such rule so provides*" (italics supplied). Manifestly, it was the Board's rule which made the misdemeanor, not the Legislature; and the statute was clearly unconstitutional so far as it sought to allow the Beverage Control Board to decide which of its rules carried criminal penalties and sanctions.

There can be but little doubt that the danger of inflation was acute when the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*) was passed by the United States Congress. The nation was involved in war and Congress felt that a price administrator should be appointed and empowered to determine the maximum prices which could be charged for the immense number of commodities which were daily consumed by the public. The broadest possible powers were granted so that all the wide range of productive industries throughout the nation might be kept within bounds, runaway prices prevented and the home front protected. There is little question that without this statute the war could be won by our soldiers abroad and lost at home through the destruction and collapse of our home economic and financial system.

This court has no doubt that Congress, in the exercise of its war power, may control prices as part of a wartime anti-inflation policy.

In *United States* v. *MacIntosh* (283 U. S. 605, 622) Mr. Justice SUTHERLAND said: " The war power, when necessity calls for its exercise, tolerates no qualifications or limitations, unless found in the Constitution or in applicable principles of international law." The learned Justice then proceeded to set forth in detail many of the enlarged powers which Congress possesses in time of war over and above those possessed in time of peace. In this detailed list appear the words " prices of food and other necessities of life [may be] fixed and regulated ".

It is not necessary in this opinion to review or add to the decisions already made which sustain the United States Emergency Price Control Act as a constitutional exercise of the war power of Congress. (*Taylor* v. *Brown,* 137 F. 2d 654; *Rottenberg* v. *United States,* 137 F. 2d 850.)

Congress delegated to the Price Administrator the power to fix prices that were fair and equitable and to make such reasonable rules and regulations as were necessary for the effective administration of the regulatory program. The price ceilings determined by the Administrator and the rules and regulations to make such ceilings effective were nation-wide in their application and *were operative within the State of New York,* with or without action by the Legislature of our State. Every citizen of the State of New York must obey them.

Subdivision (a) of section 4 of the Federal Act [U. S. Code, tit. 50, Appendix, § 904, subd. (a)] made it unlawful to sell or deliver any commodity in violation of any regulation or order establishing maximum or minimum prices, and subdivision (b) of section 205 [U. S. Code, tit. 50, Appendix, § 925, subd. (b)] provided that the willful violator of any provision of section 4 of the Act should, upon conviction, be subject to a fine or imprisonment, or both. This was the law within the State of New York, as one of the States within the nation, at the time of the passage of the New York State War Emergency Act.

All that the Legislature of the State of New York did was to enact a statute by which the existing Federal regulations operative in New York might be carried out and enforced. The State, by this statute, merely provided an additional plan of enforcement in aid of the existing law within the State of New York, made operative in this State by the national Congress.

The New York enactment empowers the State War Council " for the general purpose of aiding the war effort " (§ 7, subd. 6), as quoted above, " To adopt and promulgate in this state any rationing, freezing, price fixing, or other order or regulation imposed by the authority of the federal government; and to adopt rules and issue orders with respect to the enforcement of any such rationing, freezing, price fixing, or other order or regulation."

This presents an entirely different situation from that presented to the Court of Appeals in *Darweger* v. *Staats* (267 N. Y. 290) which held invalid the Schackno Act (L. 1933, ch. 781), making National Industrial Recovery Act codes (U. S. Code, tit. 15, § 701 *et seq.*) apply to *intrastate* transactions when such codes were filed with the Secretary of State of this State, and making the violation of such codes a misdemeanor.

In analyzing the Schackno Act, the court stated (267 N. Y. 290, 304, 306, *supra*) : " Stripped of all its verbiage, and narrowing these provisions down to the real authority, we find that the Legislature of the State of New York has turned over to the National Administrator the question of determining whether there shall be price-fixing in New York State of coal and what it shall be. The Legislature has left too many things to be determined by other bodies to make this law constitutional. * * * The Legislature cannot leave to a body of industrials throughout the United States to declare that an emergency exists here in intrastate business, and to provide methods and means for meeting that emergency. The Legislature cannot leave to a National Administrator to declare what shall or shall not be a crime in New York State. * * * It [the Legislature] has not created or appointed any agency representing the People of the State to form rules or regulations or to even determine that price-fixing in the coal business is necessary."

In the New York State War Emergency Act, the Legislature has delegated nothing to Congress or the Price Administrator. Congress, through the exercise of its own *paramount war power*, has established an Office of Price Administration whose regulations are the law of the land and applicable to New York State as well as the rest of the nation. This is far different from the National Industrial Recovery Act codes; they applied solely to *interstate* transactions. Any comparable regulations to cover *intrastate* activities had to stem from action by the State Legislature; leaving the nature of those *intrastate* regulations to some extrastate body (whether the National Recovery Administrator

or an industrial group) was regarded as invalid delegation of legislative power. The State War Council *may* adopt such price-fixing regulation *as it deems proper*. The State Act does not delegate anything to any extrastate body; whatever delegation is involved is to the State War Council, an " agency representing the People of the State ", as suggested by the *Darweger* case (*supra,* p. 306). All the Legislature has done is to permit the Council to add a new *enforcement* sanction to regulations which were already in full force and effect within the State. The Council creates no new prohibitions or regulations as to prices, rents or rationing; it is merely empowered to make available the enforcement facilities of the State for maintaining adherence to the law prevailing in New York. As the Council's resolution of April 28, 1943 (*supra*), states, the Federal regulations are promulgated " Solely for the purpose of enforcement ".

In passing, one cannot fail to comment that the National Industrial Recovery Act was declared unconstitutional by the United States Supreme Court subsequent to the *Darweger* decision. (*Schechter Corp.* v. *United States,* 295 U. S. 495.)

The Act does not violate the provisions of section 16 of article III of the New York State Constitution. This provision bars the Legislature of the State from incorporating into an enactment another statute by mere reference. The State Constitution provides: " No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act."

The need for this constitutional limitation on legislative action is stated in *People ex rel. N. Y. Elec. Lines Co.* v. *Squire* (107 N. Y. 593, 602, affd. 145 U. S. 175): " The object and intent of the constitutional provision was to prevent statute laws relating to one subject from being made applicable to laws passed upon another subject, through ignorance and misapprehension on the part of the legislature, and to require that all acts should contain within themselves such information as should be necessary to enable it, to act upon them intelligently and discreetly."

In a word, a statute must disclose its provisions clearly so that the Legislature may act upon it intelligently.

In construing this section of the Constitution (art. III, § 16, formerly § 17) the Court of Appeals said: " A constitutional provision intended to operate as a restraint upon the legislature, with respect to the language and forms of expression to be used in framing acts of legislation, is not to be so construed as to embrace cases not fairly within its general purpose or policy,

or the evils which it was intended to correct, though they may be within its letter.'' (*People ex rel. Everson* v. *Lorillard et al.,* 135 N. Y. 285.)

In *People ex rel. N. Y. Elec. Lines Co.* v. *Squire* (*supra*) the legislative enactment of 1885 established a board of commissioners to enforce an 1884 statute. The court said (p. 601): '' The act of 1885 treats that of 1884 as valid and existing law, *and purports simply to provide methods, by which it may be more conveniently carried out and enforced.''* (Italics supplied.)

This constitutional restriction has no application to a statute which provides methods for the enforcement of an existing law. (*People* v. *Buffalo Cold Storage Co.,* 113 Misc. 479; *People ex rel. Everson* v. *Lorillard et al.,* 135 N. Y. 285, *supra; People ex rel. Commissioners* v. *Banks,* 67 N. Y. 568.)

Neither does the fact that the War Emergency Act permits the State War Council to adopt rules and regulations of the Price Administrator not yet in existence render the statute inoperative. (*Watkinson* v. *Hotel Pennsylvania,* 195 App. Div. 624, affd. 231 N. Y. 562; *Transit Commission* v. *Long Island R. R.,* 248 App. Div. 749, affd. 272 N. Y. 27; *Matter of Thalmann,* 177 Misc. 1055.)

While this court has no doubt of the constitutionality of the Act, yet it cannot refrain the comment that, in passing upon legislation enacted in time of war, when the very life of the nation is threatened, every doubt should be resolved in favor of the legislation. (*Johnson* v. *City of New York,* 274 N. Y. 411, 430.) A mere quotation from this case will suffice: '' It has been our repeated admonition that legislation should not be declared unconstitutional unless it clearly appears to be so; all doubts should be resolved in favor of the constitutionality of an act.''

The Constitution, drafted to preserve a nation and protect its citizens, should not be construed as a strait jacket to stifle that nation in time of war. The drafters framed our Federal Constitution '' in order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defense, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our posterity ''. They did not intend that the instrument should be construed as a means to help destroy the very nation which the framers created. This comment applies alike to the State Constitution.

The motion to dismiss the complaint on the ground that the New York State War Emergency Act is an unconstitutional legislative enactment is denied and the complaint is set for hearing on the merits.