SPRATT, APPELLANT, *v.* HELENA POWER TRANSMISSION CO., RESPONDENT.

(No. 2,461.)

HELENA POWER TRANSMISSION CO., RESPONDENT, *v.* SPRATT ET AL., APPELLANTS.

(Nos. 2,462, 2,471.)

(Submitted January 13, 1908. Decided March 23, 1908.)

[94 Pac. 631.]

*Eminent Domain—Foreign Corporations—Public Use—Statutes —Constitutionality — Amendment by Title — Trespassers — Right to Condemn—Possession Pending Proceedings—Obiter Dictum.*

Supreme Court—*Obiter Dictum.*
  1. A decision by the supreme court upon a question within the issues, fully argued on appeal by counsel and deliberately considered by the court in its opinion, is not *obiter dictum.*

Eminent Domain—Public Use—Private Profit.

2.  The fact that a party seeking to have land condemned for a use held public in its nature expects to receive profit from his enterprise does not change the character of the use from a public to a private one.

Waters—Constitution—Self-executing Provision.

3.  Section 15, Article III of the Constitution, declaring that the use of all water appropriated for *sale, rental,* distribution or other beneficial use, etc., shall be a public use, is self-executing, and should receive a broad construction.

Eminent Domain—Electric Power Plants—Public Use.

4.  The holding, in *Helena Power Transmission Co.* v. *Spratt,* 35 Mont. 108, that the taking of land for the construction of a dam, designed to furnish electric power to industrial enterprises and to the public generally, is for such a public use as will support the right to acquire the land by condemnation, reaffirmed.

Statutes—Constitutionality—Presumptions.

5.  Every reasonable intendment is in favor of the constitutionality of a law, and before it can be pronounced invalid, the invalidity must be made manifest beyond a reasonable doubt.

Statutes—Constitutionality—Amendment by Title.

6.  An Act, original in form, which grants some power, confers some right or creates some burden or obligation, is not in conflict with the provisions of section 25, Article V of the Constitution, which provides that "no law shall be revised or amended, or the provisions thereof extended by reference to its title only," even though it does refer to some other existing statute, general or local, for the purpose of pointing out the procedure or some administrative detail necessary for the execution of the power, the enforcement of the right or the discharge of the burden or obligation.

Eminent Domain—Foreign Corporations—Statutes—Constitutionality.

7.  *Held,* that the Act of 1907, approved February 20, 1907 (Session Laws 1907, Chapter 23, page 38), empowering foreign corporations to exercise the right of eminent domain, is not in violation of section 25, Article V of the Constitution, referred to in the foregoing paragraph.

Statutes—Constitutionality—Who may not Question.

8.  A person who is not one of a class whose rights are said to have been discriminated against by an alleged special Act of the legislature, contrary to the provisions of section 26, Article V of the Constitution, will not be heard to complain of its unconstitutionality on that account.

Eminent Domain—Foreign Corporations—Statutes—Constitutionality.

9.  *Held,* that the Act of 1907, Chapter 23, page 38, granting foreign corporations the power to condemn lands for certain purposes, is not open to the constitutional objection (Article XV, sec. 11) that under it such corporations are granted greater rights or privileges than are accorded to domestic corporations, in that, after permission to do business in this state, they may, under their charters granted in other states, thereafter divert the property taken for a public use to an exclusively private one.  The state has full power to prevent such a contingency.

Same—Commissioners—Appointment—When not Improper.

10.  Where land, sought to be condemned by a corporation for the construction of a dam to be used in the generation of electric power, had been flooded prior to the appointment of commissioners to determine the damages, an objection to their appointment that it was so flooded

was properly overruled, in the absence of any evidence that the water could or would not be withdrawn to enable an examination of the premises.

**Same—Stay—Injunction.**
11. A motion to stay further prosecution of condemnation proceedings until another judge of the same court could pass on the question of enjoining the prosecution of the condemnation proceedings, was properly denied where no injunction was authorized.

**Same.**
12. Under section 4463, Civil Code, providing that an injunction cannot be granted to stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded, unless such restraint is necessary to prevent a multiplicity of such proceedings, injunction does not lie to restrain condemnation proceedings, in the absence of a showing that the restraint is necessary to prevent a multiplicity of proceedings.

**Same—Trespassers—Right to Proceed.**
13. Merely because a corporation had become a trespasser by reason of the reversal of an order of the district court empowering it to take lands under condemnation proceedings, it was not thereafter, while still a trespasser, deprived of the right to again invoke the power of eminent domain.

**Same—Report of Commissioners—Failure to Appeal—Effect.**
14. Where commissioners, appointed to assess damages occasioned by the taking of land through eminent domain proceedings, do not perform their whole duty in the premises (Code Civ. Proc., sec. 2221), either by reason of their nonfeasance or malfeasance, the injured party may appeal or move to set aside their report. Upon failure to invoke either of these remedies, such party may not thereafter be heard to say that his property was taken without due process of law.

**Same—Possession Pending Proceedings.**
15. After the report and assessment of the commissioners, appointed to determine the damages in eminent domain proceedings, had been made and filed, and the amount of damages so assessed had been paid into court for the owner of the property, the court, under section 2229 of the Code of Civil Procedure, properly permitted plaintiff to continue in possession of the property which had theretofore been obtained under an order in a like proceeding, the judgment in which, however, had been reversed on appeal.

*Appeal from District Court, Lewis. and Clark County; Thos. C. Bach, Judge.*

Action by Augustus N. Spratt against the Helena Power Transmission Company to restrain condemnation proceedings. From a judgment for defendant, plaintiff appeals. Also condemnation proceedings by the Helena Power Transmission Company against Augustus N. Spratt and others. From a judgment for plaintiff, defendants appeal. Both cases affirmed.

STATEMENT OF THE CASE BY THE JUDGE DELIVERING THE OPINION.

The appeals now before the court grew out of an attempt by respondent to acquire certain of appellants' lands by the right of eminent domain. The parties to these actions are the same, and the parcels of land substantially the same, as were those involved in *Helena Power Transmission Co.* v. *Spratt*, 35 Mont. 108, 88 Pac. 773, 8 L. R. A., n. s., 567, which cause was decided February 8, 1907, the court holding that under the laws of Montana, as they then existed, the respondent, a foreign corporation, had no right to exercise the power of eminent domain within this state. On February 6th, there was introduced in the House of Representatives, the legislature then being in session, House Bill 249, which will be adverted to hereinafter; it passed the House and Senate, and received the Governor's approval on February 20th. The next day the respondent commenced an action to condemn the lands above mentioned in the district court of the First Judicial District, and it fell to that department presided over by the Honorable J. M. Clements. This action we shall refer to hereafter as the "condemnation proceeding." Its trial was begun March 25th, upon the issues framed by the complaint and answer of the respective parties. Practically the same evidence was introduced at this trial as was in *Helena Power Transmission Co.* v. *Spratt, supra;* and we adopt the statement of facts there made as applicable to this phase of the controversy at hand.

Pending the trial—on April 22d, to be exact—the appellants commenced an action against respondent in the same court, but in the department presided over by the Honorable Thomas C. Bach, wherein appellants prayed as a part of the relief asked that the respondent be enjoined and restrained from prosecuting the condemnation proceeding. This action will be referred to hereafter as the "injunction proceeding." On April 24th, the court, Judge Clements presiding, was moved to suspend further action in the condemnation proceeding until the injunction proceeding might be heard and determined. This motion was denied, and

on the same day the court determined the use to be a public use, that the public interests required the taking of appellants' lands, the amount of said land asked for by respondent to be necessary, and appointed commissioners to ascertain and determine the amount to be paid to appellants by reason of the appropriation of their property.

Thereafter the court, Judge Bach presiding, heard the allegations and proofs of the parties in the injunction proceeding, from which these facts, with others, appeared: That the first proceeding by respondent to acquire appellants' lands was commenced April 24, 1906. After a hearing in that suit commissioners were appointed by the court to examine the land, and these examined the premises in controversy, heard evidence concerning its value, and made report and award on August 4, 1906. Ten days later the appellants appealed to this court from the order appointing the commissioners and from their award. Notwithstanding the appeal respondent paid the amount of the award into the district court, and obtained from the court an order to be let into possession of the land, this latter order being made on December 12, 1906. At this time respondent's dam, an immense structure of steel and concrete, built across the Missouri river, and about seventy feet high, was nearly complete. The river waters were escaping under the dam through six huge pipes which were provided with headgates weighing about 6,000 pounds each, and so arranged that they might be dropped and the opening closed. About January 25, 1907, after the cause above mentioned had been argued and was under advisement in this court, the respondent caused the headgates to be dropped. In order to seal the headgates securely, a filling of earth was deposited over them. The waters of the Missouri river then rose over the spillway, and ever since it has been impossible to release these imprisoned waters, except by overflow, without a total destruction of the dam. So, when the respondent commenced the condemnation proceeding at bar, the water covered almost all of the land sought to be condemned. On May 8,

1907, the court denied the motion for the injunction to restrain the prosecution of the condemnation proceeding.

The commissioners, in the condemnation proceeding now before the court, as they were directed by the order appointing them, met for the first time on April 24, 1907, and at divers times thereafter. They visited the premises in controversy, heard the allegations of the respective parties, took the proofs that were offered, and on the twenty-eighth day of June, 1907, filed a report of their proceedings and of the assessment of damages made by them. On July 12th following, the court, at the instance of the respondent, made its order in the condemnation proceeding authorizing the respondent to continue in possession of the property sought to be appropriated, and to use and possess the same during the pendency and until the final conclusion of the proceedings, and staying all actions and proceedings against the respondent on account thereof.

Appellants have appealed, first, from the order of the court in the condemnation proceeding determining that the use for which the respondent is seeking to take the property is a public use, that the public interest required the taking of such property, that the respondent is authorized and empowered by law to appropriate the same, and from that portion of the order appointing commissioners to ascertain and determine the amount to be paid by respondent to appellants as damages by reason of the appropriation of such property; second, from the order of the court denying and refusing the motion and application of appellants for an injunction restraining the prosecution of the condemnation proceeding; third, from the order of the court determining that the respondent was entitled and authorized to continue in the possession of the property sought to be condemned, and to use and possess the same during the pendency and until the final conclusion of the litigation, and that all actions and proceedings against the respondent on account of said order be stayed until such time. By stipulation of the respective counsel the three appeals were heard and considered together.

*Messrs. Clayberg & Horsky,* and *Mr. M. S. Gunn,* for Appellants.

The power of eminent domain rests inactive in the state until it is given life and activity by action of the legislature declaring for what uses such power may be exercised. Not only must the legislative assembly declare what are public uses within the state, but they must go further and provide that the power of eminent domain may be exercised for such uses. (*In re Poughkeepsie Bridge Co.,* 108 N. Y. 483, 15 N. E. 601; 1 Lewis on Eminent Domain, sec. 238; Cooley's Constitutional Limitations, 5th ed., p. 463.) The power rests in the people, and is exercised through its agency—the legislative department—subject only to such limitations as the people prescribe by their constitution. (Cooley's Principles Const. Law, p. 386; *People* v. *Draper,* 15 N. Y. 532; *Thorpe* v. *Rutland etc. R. R. Co.,* 27 Vt. 140, 62 Am. Dec. 625; *People* v. *Hill,* 163 Ill. 186, 46 N. E. 796, 36 L. R. A. 634.)

Subdivisions 4 and 5 of section 2211, Code of Civil Procedure, as amended by Laws of 1899, page 35, and subdivision 11, making electric power lines a public use, are insufficient in their terms, as a declaration by the legislative assembly, to make the use of ground a public use when it is sought to be taken for the purpose of flooding, in the creation of a reservoir to furnish power to generate and distribute electricity. These subdivisions, like all the remainder of the statute with reference to eminent domain, being against common right and permitting the taking of private property, must be construed very strictly, and their terms not extended by implication. (Lewis on Eminent Domain, sec. 254; *Binney's Cases,* 2 Bland. Ch. 99; *In re Poughkeepsie Bridge Co.,* 108 N. Y. 483, 15 N. E. 601.)

Public and private use cannot be intermingled in the same enterprise. The enterprise must be such that the public will be entitled to its entire use absolutely, excluding any and all private use. The right of the public to the use must always be capable of enforcement, and the conditions must be such that the state has full power, authority and machinery to compel the

party in charge of the enterprise to permit the public to use it to the utter exclusion of all private purposes. The following cases decide and illustrate the above principles: *Fallsburg Power Co.* v. *Alexander,* 101 Va. 98, 99 Am. St. Rep. 855, 43 S. E. 194, 61 L. R. A. 129; *In re Barre Water Co.,* 62 Vt. 27, 20 Atl. 109, 9 L. R. A. 195; *Avery* v. *Vermont Electric Co.,* 75 Vt. 235, 98 Am. St. Rep. 818, 54 Atl. 179; *Berrien Springs Water Co.* v. *Berrien Circuit Judge,* 133 Mich. 48, 103 Am. St. Rep. 438, 94 N. W. 379; *Brown* v. *Gerald,* 100 Me. 351, 109 Am. St. Rep. 526, 61 Atl. 785, 70 L. R. A. 472; *State* v. *White River Power Co.,* 39 Wash. 648, 82 Pac. 150, 2 L. R. A., n. s., 842; *State* v. *Superior Court,* 42 Wash. 660, 85 Pac. 666, 5 L. R. A., n. s., 672; *Louisiana Navigation Co.* v. *Doullut,* 114 La. 906, 38 South. 613; *Healy Lumber Co.* v. *Morris,* 33 Wash. 490, 99 Am. St. Rep. 964, 74 Pac. 681, 63 L. R. A. 820; *Southwest Missouri Light Co.* v. *Scheurich,* 174 Mo. 235, 73 S. W. 496; *Gaylord* v. *Sanitary Dist. of Chicago,* 204 Ill. 576, 98 Am. St. Rep. 235, 68 N. E. 522, 63 L. R. A. 582; *In re Rhode Island Ry. Co.,* 22 R. I. 457, 48 Atl. 591, 52 L. R. A. 879; *Tyler* v. *Beacher,* 44 Vt. 648, 8 Am. Rep. 398; *Board of Health* v. *Van Hoesen,* 87 Mich. 533, 49 N. W. 894, 14 L. R. A. 114.

House Bill No. 249 is unconstitutional.   (a) It violates the provisions of section 25, Article V of the Constitution.   An Act is unconstitutional and violative of section 25 above, unless it is complete in itself, and so plain that no other statute need be referred to in connection with it, except as to the procedure. (*Stewart* v. *County of Hale,* 82 Ala. 209, 2 South. 270; *Bay Shell Road Co.* v. *O'Donnell,* 87 Ala. 376, 6 South. 119; *Beard* v. *Wilson,* 52 Ark. 290, 12 S. W. 567; *Watkins* v. *Eureka Springs,* 49 Ark. 131, 4 S. W. 384; *City of Pittsburgh's Petition,* 138 Pa. 401, 21 Atl. 759; *Titusville Iron Works* v. *Keystone Oil Co.,* 122 Pa. 627, 15 Atl. 917, 1 L. R. A. 361; *In re Buelow,* 98 Fed. 86; *State* v. *Beddo,* 22 Utah, 432, 63 Pac. 96; *State* v. *Tibbets,* 52 Neb. 228, 66 Am. St. Rep. 492, 71 N. W. 990; *Rose* v. *Lampley,* 146 Ala. 445, 41 South. 521; *Badenoch* v. *City of Chicago,* 222 Ill. 71, 78 N. E. 31; *People* v. *Board of Commrs. of Chicago,* 221 Ill. 9, 77 N. E.

321.)   (b) It violates section 26, Article V of the Constitution of the state.   It is a special law applicable only to certain foreign corporations, and is therefore not uniform in its operation, and denies to certain foreign corporations, doing business within the state, the equal protection of the laws.   (*Webb* v. *Downes*, 93 Minn. 457, 101 N. W. 966; *Block* v. *Schwartz*, 27 Utah, 387, 101 Am. St. Rep. 971, 76 Pac. 22, 65 L. R. A. 308; *Wright* v. *Hart*, 182 N. Y. 330, 75 N. E. 404, 2 L. R. A., n. s., 338; *McKinster* v. *Sager*, 163 Ind. 671, 106 Am. St. Rep. 268, 72 Pac. 854, 68 L. R. A. 273; *Miller* v. *Crawford*, 70 Ohio St. 207, 71 N. E. 631; *Van Harlingen* v. *Doyle*, 134 Cal. 53, 66 Pac. 44, 54 L. R. A. 771; *State* v. *Justus*, 90 Minn. 474, 97 N. W. 124; *City of Butte* v. *Paltrovich*, 30 Mont. 18, 104 Am. St. Rep. 698, 75 Pac. 521; *Thomas* v. *City of St. Cloud*, 90 Minn. 477, 97 N. W. 125; *Hetland* v. *Board of County Commrs.*, 89 Minn. 492, 95 N. W. 305; *State* v. *Ritt*, 76 Minn. 531, 79 N. W. 535; *Bumsted* v. *Henry* (N. J.), 64 Atl. 475; *Badenoch* v. *City of Chicago*, 222 Ill. 71, 78 N. E. 31; *People* v. *Board of Commrs. of Chicago*, 221 Ill. 9, 77 N. E. 321; *State* v. *Schraps*, 97 Minn. 62, 106 N. W. 106; *People* v. *Martin*, 178 Ill. 611, 53 N. E. 309; *People* v. *Knopf*, 183 Ill. 410, 56 N. E. 155; *In re Sohncke*, 148 Cal. 262, 113 Am. St. Rep. 236, 82 Pac. 956, 2 L. R. A., n. s., 813; *Gulf, Colorado & S. F. Ry. Co.* v. *Ellis*, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; *Magoun* v. *Illinois Trust & S. Bank*, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; *State* v. *Cudahy Packing Co.*, 33 Mont. 179, 114 Am. St. Rep. 804, 82 Pac. 833; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679.)

Under the eminent domain Act of Montana, appellants were entitled to have the commissioners examine the lands sought to be appropriated; to test their character, and to determine the value thereof; but by respondent's wrongful acts in flooding the same prior to the commencement of this proceeding, appellants were deprived of the rights guaranteed to them by the statutes of Montana, and the Fourteenth amendment to the constitution of the United States.

The language of section 2221, Code of Civil Procedure, is: "The commissioners must meet at the time and place mentioned in the order appointing them, and proceed to examine the lands sought to be appropriated, and shall hear the allegations and evidence of all persons interested in each of the several parcels of land, and shall ascertain and assess" the damages.

These provisions were all enacted by the legislature for the protection of the land owner, and, if any are omitted, the land is taken without due process of law.

The personal examination of the land by the commissioners is as much required as the hearing of the witnesses. Their award is as much based upon such examination and what they learn therefrom, as upon the evidence of witnesses sworn and examined before them. In many instances the examination of the land made discloses the falsity of the testimony of witnesses, because such facts as the commissioners learn from the examination are natural, original and certain, and not dependent upon the recollection or whims of witnesses. The commissioners are therefore entitled to take such facts into consideration in estimating the damages, and to exclude the testimony of witness contrary thereto. (15 Cyc. 879 et seq.; *Shoemaker* v. *United States*, 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170; *Tedens* v. *Sanitary District*, 149 Ill. 87, 36 N. E. 1033; *In re Newland Ave.*, 15 N. Y. Supp. 63, 60 Hun, 581; *Readington* v. *Dilley*, 24 N. J. L. 209; *Lehigh Valley R. R. Co.* v. *Doon* etc., 43 N. J. L. 528; *Western Pacific R. R. Co.* v. *Reed*, 35 Cal. 621; *Central Pac. R. R. Co.* v. *Pearson*, 35 Cal. 247; *Spring Valley Water Co.* v. *San Francisco*, 22 Cal. 434; *Pennsylvania R. R. Co.* v. *Keiffer*, 22 Pa. St. 356; *Jefferson* v. *Tuscarora R. R. Co.*, 9 Pa. Dist. 17; *Lyman* v. *Town of Burlington*, 22 Vt. 131; *Andrews* v. *Johnson*, 4 N. C. 26; *Kankakee R. R. Co.* v. *Straut*, 102 Ill. 666; *Charleston* etc. *Bridge Co.* v. *Comstock*, 36 W. Va. 263, 15 S. E. 69; *Wakefield* v. *Boston* etc. *R. R. Co.*, 63 Me. 385; *In re Williams Street*, 19 Wend. 678; *St. Croix Lumber Co.* v. *Pennington*, 2 Dak. Ter. 467, 11 N. W. 497; *Grand Rapids Ry.* v. *Chesebro*, 74 Mich. 466, 42 N. W. 66; *Tide Water Canal Co.* v. *Archer*, 9 Gill & J. 479; *Washburn* v. *Milwaukee* etc. *R.*

*R. Co.,* 59 Wis. 364, 18 N. W. 328.)   The use in the statute of the word "examine" instead of the word "view" discloses that the legislature intended to give the commissioners very comprehensive powers and rights.

Not only is the statute of eminent domain to be strictly construed as to what property is to be taken, but the proceedings pointed out by the statute to accomplish this end must be strictly followed.   (*Detroit etc. Assn.* v. *Highway Commissioners of Hamtramck,* 34 Mich. 36; *City of St. Louis* v. *Koch,* 169 Mo. 587, 70 S. W. 143; *Chicago & Alton R. R. Co.* v. *Smith,* 78 Ill. 96; *Colorado Fuel & Iron Co.* v. *Four Mile R. R.,* 29 Colo. 90, 66 Pac. 902; *State* v. *Mayor of Jersey City,* 54 N. J. L. 49, 22 Atl. 1052; *Nelson* v. *Harlan County,* 2 Neb. (unof.) 537, 458; *Currier* v. *Mariette etc. R. R. Co.,* 11 Ohio St. 288; *Sharp* v. *Johnson,* 4 Hill, 92, 40 Am. Dec. 259.)

That the injunction should have been granted is sustained by the following authorities: *Waycross Air-Line R. Co.* v. *Southern Pine Co.,* 111 Ga. 233, 36 S. E. 641; *Mobile & M. Ry. Co.* v. *Alabama Midland Ry. Co.,* 123 Ala. 145, 26 South. 324; *Riley* v. *Charleston Union Station,* 67 S. C. 84, 45 S. E. 149; *State* v. *Caretta Ry. Co.* (W. Va.), 56 S. E. 520; *Burrall* v. *American T. & T. Co.,* 224 Ill. 266, 79 N. E. 705, 8 L. R. A., n. s., 1091; *Spaulding* v. *Macomb Ry. Co.,* 225 Ill. 585, 80 N. E. 327; *Village of Wayzata* v. *Great Northern Ry. Co.,* 46 Minn. 505, 49 N. W. 205; *Corning* v. *Troy I. & Factory,* 40 N. Y. 191.

*Messrs. Carpenter, Day & Carpenter,* for Respondent.

The former decision of this court on the question of public use was not *obiter.*   (*Carroll* v. *Carroll's Lessee,* 16 How. 286, 14 L. Ed. 936; *Railroad Cos.* v. *Schutte,* 103 U. S. 143, 26 L. Ed. 327; *Union Pac. Co.* v. *Mason City Co.,* 199 U. S. 166, 26 Sup. Ct. 19, 50 L. Ed. 134; *Brown* v. *Chicago & N. W. R. Co.,* 102 Wis. 137, 77 N. W. 748, 78 N. W. 771, 44 L. R. A. 586.)

The right of eminent domain may be granted and exercised for a public use even though a private use be intermingled with it. The old rule of strict construction of statutes in derogation of

the common law is abrogated by the Montana Codes, and even where the rule prevails there are cases of the highest authority which hold that such intermingling does not destroy the right to condemn for a public use. (*Bloomfield Natural Gas Light Co.* v. *Richardson,* 63 Barb. 450; *Pocantico Water W. Co.* v. *Bird,* 130 N. Y. 249, 29 N. E. 246; *Lake Koen Nav. etc. Co.* v. *Klein,* 63 Kan. 484, 65 Pac. 684; *State* v. *Centralia-Chehalis Elec. Ry. Power Co.,* 42 Wash. 632, 85 Pac. 345, 7 L. R. A., n. s., 198.)

A provision that the general laws of the state shall apply to the subject of an Act is not within the constitutional prohibition. (See *Denver Circle R. Co.* v. *Nestor,* 10 Colo. 403, 15 Pac. 714; *Beard* v. *Wilson,* 52 Ark. 290, 12 S. W. 567; *Porter* v. *Waterman,* 77 Ark. 383, 91 S. W. 754; *Titusville Iron Works* v. *Keystone Oil Co,* 122 Pa. St. 627, 15 Atl. 917, 1 L. R. A. 361; *In re City of Pittsburg,* 138 Pa. St. 401, 21 Atl. 757; *People ex rel. N. Y. El. Lines Co.* v. *Squire,* 107 N. Y. 593, 1 Am. St. Rep. 893, 14 N. E. 820; *Warren* v. *Crosby,* 24 Or. 558, 34 Pac. 661; *People* v. *Banks,* 67 N. Y. 575; *People* v. *Kriesel,* 136 Mich. 80, 98 N. W. 850; *State* v. *Kidd,* 74 Ind. 554; *State* v. *Hays,* 78 Mo. 600; *Nations* v. *State,* 64 Ark. 467, 43 S. W. 396; *People* v. *Learned,* 5 Hun, 625; *People* v. *Hayt,* 7 Hun, 39.)

Under the Montana Constitution the title is an indispensable part of every Act. (*State* v. *Mitchell,* 17 Mont. 75, 76, 42 Pac. 100; Sutherland on Statutory Construction, sec. 86; Cooley's Constitutional Limitations, 4th ed., 172.) The title of Chapter 23 is "An Act to authorize and empower foreign corporations to exercise the right of eminent domain in Montana." This title must be read in connection with the Act of which it is a part, and the Act must be interpreted with an inclusion of the title. Thus interpreted it is perfectly clear that by Chapter 23 it was the intention of the legislature to confer upon certain foreign corporations the right to acquire real property by the exercise of the power of eminent domain, and that Title VII, Part III was referred to only to prescribe the manner of exercising the power. The title may be resorted to to ascertain the meaning of the body of the Act. (*Myer* v. *Car Co.,* 102 U. S. 11, 26 L.

Ed. 59; *Cohn* v. *People,* 149 Ill. 486, 41 Am. St. Rep. 304, 37
N. E. 60, 23 L. R. A. 823; *Rosin* v. *Lidgerwood Mfg. Co.,* 89 App.
Div. 245, 86 N. Y. Supp. 51; *Town of Benton* v. *Willis,* 76 Ark.
443, 88 S. W. 1000.)

The power of the legislature to authorize by special Act the
condemnation of particular property for a particular purpose is
not open to question. (*Starr Burying Ground* v. *North Lake
Cemetery Assn.,* 77 Conn. 83, 58 Atl. 470.)

The denial of a right to certain corporations is the denial of
a privilege, not the imposition of a burden, and hence is not
the denial of the equal protection of the laws. (*Board of Edu-
cation* v. *Illinois,* 203 U. S. 553, 51 L. Ed. 314.) Even if Chapter
23 should be held to be a special law, it does not violate the
last sentence of section 26 of Article V of the Constitution, which,
after prohibiting the legislative assembly from passing local and
special laws in certain enumerated cases, provides that "in all
other cases where a general law can be made applicable, no
special law shall be passed." By this constitutional provision
the question as to whether a general law can be made applicable
is left to the judgment and determination of the legislative as-
sembly, and not to the courts. (*People* v. *Board of Election
Commissioners,* 221 Ill. 9, 77 N. E. 325; *School City of Marion*
v. *Forest,* 168 Ind. 94, 78 N. E. 187; *Smith* v. *Indianapolis St.
R. Co.,* 158 Ind. 425, 63 N. E. 850; *Woods* v. *McCoy,* 144 Ind.
316, 43 N. E. 269, 33 L. R. A. 97; *People* v. *Mullender,* 132 Cal.
217, 64 Pac. 299; *People* v. *McFadden,* 81 Cal. 489, 15 Am. St.
Rep. 66, 22 Pac. 854; *Brown* v. *Denver,* 7 Colo. 311, 3 Pac. 457,
458; *Carpenter* v. *People,* 8 Colo. 122, 123, 5 Pac. 830; *Rogers*
v. *People,* 9 Colo. 451, 59 Am. Rep. 146, 12 Pac. 844; *State* v.
*County Court of Boone Co.,* 50 Mo. 323, 11 Am. Rep. 415; Suther-
land on Statutory Construction, sec. 117.) "The denial of equal
rights and privileges by discriminating legislation can be pleaded
only by those who can show that they belong to the class dis-
criminated against." (*Brown* v. *Ohio Valley R. Co.,* 79 Fed.
176; *Duer* v. *Small,* 17 How. Pr. (N. Y.) 205; *Strickrod* v. *Com-*

*monwealth*, 86 Ky. 285, 5 S. W. 580; *The Winnebago*, 205 U. S. 360, 27 Sup. Ct. 509, 51 L. Ed. 836.)

A trespasser may acquire real estate by eminent domain. (*Samish River Boom Co.* v. *Union Boom Co.*, 32 Wash. 586, 73 Pac. 674; 2 Lewis on Eminent Domain, secs. 507, 634.)

An injunction ought not to be granted when the benefit secured by it to one party is of but little importance, while it would operate oppressively on the other party, unless the wrong complained of is of so wanton and provoking a character as properly to deprive the wrongdoer of any consideration as to its injurious consequences. (*Jones* v. *City of Newark*, 11 N. J. Eq. 452; *Morris & E. R. Co.* v. *Prudden*, 20 N. J. Eq. 530; *Erie Ry. Co.* v. *Delaware L. & W. Co.*, 21 N. J. Eq. 283.)   An injunction will not be granted where it will work great harm to one party without any corresponding benefit to the other, and an adequate remedy can be afforded by other means (*McElroy* v. *Kansas City*, 21 Fed. 257; *Swift* v. *Jenks*, 19 Fed. 641; *Hawley* v. *Beardsley*, 47 Conn. 471; *Hartridge* v. *Rockwell*, R. M. Charlt. (Ga.) 260; *Seeger* v. *Mueller*, 28 Ill. App. 28); nor where it would cause great injury to the defendants, and might be of serious detriment to the public, without corresponding advantage to complainant. (*Torrey* v. *Camden & A. R. Co.*, 18 N. J. Eq. 293; *Higbee* v. *Camden & A. Ry. Co.*, 20 N. J. Eq. 435; *Hentz* v. *Long Island R. Co.*, 13 Barb. 646; *Whittlesey* v. *Hartford P. & F. R. Co.*, 23 Conn. 421.)   And even in cases where the court is satisfied that a mandatory injunction ought to be granted, the order will be stayed to enable the defendant to acquire the property by the power of eminent domain when any public inconvenience would result from the injunction. (*Willamette Iron Works* v. *Oregon Ry. & Nav. Co.*, 26 Or. 224, 46 Am. St. Rep. 620, 37 Pac. 1016, 29 L. R. A. 88.)   An injunction will not ordinarily be granted when the grounds may be relied on as a defense or for relief in the proceedings sought to be enjoined.   (2 Lewis on Eminent Domain, sec. 646; *Kip* v. *New York & Harlem R. R.*, 6 Hun, 24, 67 N. Y. 227; *Knickerbocker Ice Co.* v. *Mayor*, 83 N. Y. Supp. 476, 85 App. Div. 530; *Lake*

*Shore R. Co.* v. *Chicago & W. R. Co.,* 96 Ill. 125; *Boyd* v. *Logansport,* 161 Ind. 587, 69 N. E. 398.)    Especially would this rule be applicable where the act to be enjoined had already been done.

*Messrs. Wallace & Donnelly,* for Respondent.

Section 25 of Article V of our Constitution does not forbid legislation of the character of Chapter 23, Laws of 1907.    (*People* v. *Mahaney,* 13 Mich. 481; *King* v. *Elling,* 24 Mont. 478, 62 Pac. 783; *Mill* v. *Brown,* 31 Utah, 473, 120 Am. St. Rep. 935, 88 Pac. 611; *Beason* v. *Shaw* (Ala.), 42 South. 611; *State* v. *Rogers,* 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; *City Council* v. *Birdsong,* 126 Ala. 632, 28 South. 522; *In re Dietrick,* 32 Wash. 471, 73 Pac. 506; *State ex rel. Jones* v. *Superior Court,* 44 Wash. 476, 87 Pac. 521; *City of Wichita* v. *Missouri Telephone Co.,* 70 Kan. 441, 78 Pac. 886.)

Section 26 of Article V is concerned with the laws which affect the citizens of this state; not with the conditions which the state may attach to privileges extended to citizens or corporations of other states.    After positively forbidding the enactment of special laws in certain enumerated cases (none of which are pertinent here) it provides that "in all other cases where a general law can be made applicable no special law shall be enacted."    It obviously contemplates laws having to do with the citizens of this state, and with them alone.    As to corporations organized in other states or countries, this state may admit or exclude them as it sees fit.    (*Paul* v. *Virginia,* 75 U. S. 168, 19 L. Ed. 357; *Pembina Co.* v. *Pennsylvania,* 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650; *Norfolk etc. Ry. Co.* v. *Pennsylvania,* 136 U. S. 114, 10 Sup. Ct. 958, 34 L. Ed. 394; *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657.)

Appellants' position appears to be, not that the trespass forfeited the right to condemn, but that it made it impossible to condemn; that under our law lands condemned must be examined by the commissioners; that this examination is an indispensable part of the proceedings; that the only method by which

the commissioners can examine mineral lands, within the meaning of the statute, is to prospect them; that as the greater part of these lands were covered with water they could not be prospected; therefore they could not be examined; therefore they could not be condemned; and therefore it was error to make the order appointing the commissioners to condemn them.

A leading case upon the questions of what is the duty of the jury in viewing property in condemnation proceedings, and what is the purpose of the statutes in requiring the view, is that of *Washburn* v. *Railway Co.*, 59 Wis. 364, 18 N. W. 330.

In a note to the case of *Springer* v. *Chicago*, 135 Ill. 552, 26 N. E. 514, 12 L. R. A. 609, it is stated that "the object of the view is to enable the jury better to understand and apply the evidence to the end that they may proceed intelligently in the discharge of their function." (See, also, *Close* v. *Samm*, 27 Iowa, 503; *St. Louis etc. Ry. Co.* v. *Postal Telegraph Co.*, 173 Ill. 508, 51 N. E. 389; *McEwan* v. *Pennsylvania etc. Ry. Co.*, 72 N. J. L. 419, 60 Atl. 1131.)

Appellants, though fully apprised of the work being done in the construction of the dam; though aware that large sums of money were of necessity being expended upon it; though they knew, as they admit, that the dam would, on its completion, cause a submersion of their lands, took no steps whatever to enjoin the commencement of its construction or to enjoin the continuance of the work after it had been commenced. Even after it had been completed and the preparations for closing it had been begun, they remained inactive. They brought no proceedings to enjoin the flooding until after the flooding had been completed and the hearing on the application to condemn had been had in the second condemnation suit. Then, having stood by for nearly two years while the money was being expended, with a full knowledge of the purpose of its expenditure, they come into court with a demand that the property on which it has been expended be totally destroyed.

In *City of New York* v. *Pine*, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820, a similar case, it was held that the court of equity

to which the appeal had been made for the injunction should
ascertain the damages which the plaintiffs would suffer by the
construction of the dam and the appropriation of the water, and
should provide by its decree that on failure to pay these damages
the injunction would issue. In any possible view of this case,
and whether respondent is entitled to condemn or not, it is only
to this alternative relief that the appellants are entitled, and it
was clearly right to refuse the mandatory and absolute injunc-
tion which they asked for. (See, also, *Paterson etc. Ry. Co.* v.
*Kamlah,* 42 N. J. Eq. 93, 6 Atl. 444.)

HONORABLE LEW. L. CALLAWAY, Judge of the Fifth
Judicial District, sitting in place of Mr. Justice Smith, deliv-
ered the opinion of the court.

The questions presented upon the three appeals are resolved
into these: (1) Can the respondent acquire appellants' property
as for a public use? (2) Is House Bill 249, Laws of 1907,
page 38, Chapter 23, a constitutional enactment? (3) Because
of flooding appellants' lands before the condemnation proceeding
was begun, is respondent deprived of the right to condemn them,
and herein are appellants deprived of their property without
due process of law? We shall consider them in the order men-
tioned.

1. It is suggested by appellants that upon the former appeal
the court, by way of *obiter,* held that the use for which re-
spondent sought to condemn the property was a public one. We
do not regard Judge Loud's masterful discussion of the sub-
ject, nor the holding of this court thereon, as *obiter* in any sense.
The question was directly placed in issue by the pleadings, the
litigants introduced evidence in the lower court upon the pre-
cise point, and that court decided the use for which respondent
sought to condemn the land to be a public use. In this forum
the eminent counsel for the contending parties spent their en-
ergies upon this weighty question. This court, having to do
with a constitutional problem of wide import, proceeded to its
solution with caution and deliberation. It held that the use for

which the condemnation was sought was a public use. The precise question was properly presented, fully argued, and ably considered in the opinion. The decision on this phase of the case was as much a part of the judgment of the court as was that upon the question of the right of the respondent to exercise the power of eminent domain. (*Railroad Co.* v. *Schutte*, 103 U. S. 118, 26 L. Ed. 327; *Union Pacific Co.* v. *Mason City Co.*, 199 U. S. 160, 26 Sup. Ct. 19, 50 L. Ed. 134.) The judgment is controlling upon all questions properly within the issues, which the opinion shows the court deliberately considered. (*Brown* v. *Chicago & N. W. R. Co.*, 102 Wis. 137, 77 N. W. 748, 78 N. W. 771, 44 L. R. A. 586.)

It is again earnestly insisted by appellants that the right of eminent domain must be denied respondent, because "public and private use cannot be intermingled in the same enterprise." As before noted, the parties to this action and the land sought to be condemned are the same as in the former appeal; the evidence introduced by the respective parties is, in effect, the same; and this record, like the other one, does not disclose a taking for private use. And while we do not feel called upon to express an opinion upon the question appellants seek to present, for the reason that the record does not disclose a taking for private use, it may not be inapt to say that it is erroneous to assume that, because the use may bring about private profit, for that reason it cannot be a public use. The fact that the respondent expects to receive a private benefit from its enterprise certainly does not change the character of the use. Very little would be accomplished in this toiling world if the doers of deeds did not expect to reap reward. This the Constitution makers conceived; they were not dreamers, but farseeing, practical men; they were among the staunchest and ablest citizens of the state to be, realizing the potentialities in store, and anxious for the highest development of the natural resources of the state. As they said in their "Address to the People," they were in convention "to participate in laying deep and broad the foundation of this great commonwealth."

The language of section 15, Article III, of the Constitution, in the light of our history and natural conditions, in a region where the conservation and use of its waters is all-important to its development and progress, is a mandate from the sovereign people to the courts: "The use of all water now appropriated, or that may hereafter be appropriated for sale, rental, distribution or other beneficial use and the right of way over the lands of others, for all ditches, drains, flumes, canals and aqueducts, necessarily used in connection therewith, as well as the sites for reservoirs necessary for collecting and storing the same, shall be held to be a public use." The words "sale" and "rental," are especially significant. We think the foregoing section of the Constitution is self-executing (*Davis* v. *Burke*, 179 U. S. 399, 21 Sup. Ct. 210, 45 L. Ed. 249), and should receive a broad construction. "A Constitution is not to be interpreted on narrow or technical principles, but liberally and on broad and general lines, in order that it may accomplish the objects of its establishment and carry out the great principles of government." (Black on Interpretation of Laws, sec. 7.) Supplementing the constitutional provision is the legislative enactment discussed in the court's opinion in the former appeal.

Following the former decisions of this court, therefore, and reaffirming that upon the former appeal, we think the lower court was right in holding that the taking of the lands of appellants was and is for a public use.

2. Upon the former appeal it was decided that the respondent, being a foreign corporation, had not the right to acquire land by the exercise of the power of eminent domain. Immediately House Bill 249 was passed by both legislative bodies and approved by the Governor. It reads as follows:

"An Act to authorize and empower Foreign Corporations to exercise the Right of Eminent Domain in Montana.

"Be it enacted by the Legislative Assembly of the state of Montana:

"Section 1. Any corporation, organized under the laws of any state of the United States, or the laws of the United States,

and authorized to engage in business in this state, and engaged in business in this state, may acquire real property as provided in the Code of Civil Procedure, Title VII, Part III, to the same extent, for the same purposes, and in the same manner, as corporations organized under the laws of this state.

"Section 2.  This Act shall take effect and be in force from and after its passage and approval."

There existed prior to that enactment section 526 of the Civil Code, which reads: "No corporation shall acquire or hold any more real property than may be reasonably necessary for the transaction of its business, or the construction of its works, except as otherwise specially provided.  A corporation may acquire real property as provided in the Code of Civil Procedure, Title VII, Part III." Only domestic corporations are meant by this section.  (*Helena Power Transmission Co.* v. *Spratt, supra.*)  That the legislature in enacting House Bill 249 intended to give the foreign corporations therein named the same right to exercise the power of eminent domain as domestic corporations enjoy is not doubted by anybody.  But it is insisted by appellants that this enactment is void because it contravenes the express provisions of section 25 of Article V of the Constitution, which prescribes: "No law shall be revised or amended or the provisions thereof extended by references to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length."

The question is *res integra* in this state, and is of far-reaching moment.  If appellants' point is well taken, many of the most important laws enacted since the adoption of the Codes are void.  Yet, if the statute is void, it will be our duty to pronounce it so, even though the result be disastrous.  For this reason, then, in addition to the desire to reach a right conclusion in the case at bar, we have proceeded with concern.  At the outset we are guided by the rule so well stated by Mr. Justice Holloway in *In re O'Brien,* 29 Mont. 530, 75 Pac. 196: "Every reasonable intendment is to be resolved in favor of the constitutionality of the law, and, before this court can pronounce a solemn enactment of the legislative assembly invalid,

such invalidity must be made manifest beyond a reasonable doubt. (*State* v. *Camp Sing,* 18 Mont. 128, 56 Am. St. Rep. 551, 44 Pac. 516, 32 L. R. A. 635; *State* v. *Clancy,* 20 Mont. 498, 52 Pac. 267; *State* v. *McKinney,* 29 Mont. 375, 74 Pac. 1095.)''

The purpose of the Constitution framers in adopting section 25 of Article V was to avoid certain formerly well-known legislative evils. Acts were passed amending existing statutes by substituting one word for another, or phrase for another, or by inserting or eliminating a sentence or part of a sentence, without reference to the amended statute except by title. Thus vicious and unjust legislation was enacted by covert means, its real purpose being unforeseen. (*Campbell* v. *Board of Pharmacy,* 45 N. J. L. 241; *Edwards* v. *Denver & R. G. R. Co.,* 13 Colo. 59, 21 Pac. 1011.) ''An opportunity was afforded for incautious and fraudulent legislation, and endless confusion was introduced into the law. Legislators were often deceived, and the public imposed upon by such modes of legislation.'' (*Warren* v. *Crosby,* 24 Or. 558, 34 Pac. 661.) The provisions of existing statutes were made to extend to a new class of persons or subject by a like simple reference, as is illustrated in *Denver Circle R. R. Co.* v. *Nestor,* 10 Colo. 403, 15 Pac. 714, where the court said, after giving examples of the abuses perpetrated: ''By the foregoing and similar legislation, no laws on the subject matter of the titles employed were either enacted or published. It is merely the extension, by reference to titles, of laws enacted for certain localities to other localities. In such cases these acts, *as published,* were incomplete and unintelligible.'' This section was not intended to embarrass the legislature in the discharge of its law-making functions, but, on the contrary, it was intended only as a means to secure a fair and intelligent exercise thereof. (*Evernham* v. *Hulit,* 45 N. J. L. 53.) So, if the real purpose and meaning of the Act be apparent on its face, and if the legislators and others be given true direction to the subject and purpose of the proposed enactment, the constitutional mandate is satisfied. ''The Constitution does not make the obviously impracticable requirement that every Act

shall recite other Acts that its operation may incidentally affect, either by way of repeal, modification, extension or supply,'' as the supreme court of Pennsylvania put it in *Searight's Estate (Stuart's Appeal)*, 163 Pa. St. 210, 29 Atl. 800, the same language being quoted in *In re Greenfield Avenue*, 191 Pa. St. 290, 43 Atl. 225. Section 6 of Article III of the Constitution of Pennsylvania of 1873 reads as follows: ''No law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length.'' Alabama, Arkansas, and Colorado have the same provision as Pennsylvania.

New York's section 17 of Article III declares that no Act shall be passed which shall provide that any existing law or any part thereof shall be made or deemed a part of said Act, or which shall enact that any existing law, or any part thereof, shall be applicable except by inserting it in such Act. Considering this provision in *People ex rel. Commissioners* v. *Banks*, 67 N. Y. 568, the court of appeals said: ''It is not necessary, in order to avoid a conflict with this Article of the Constitution, to re-enact general laws whenever it is necessary to resort to them to carry into effect a special statute. Such cases are not within the letter or spirit of the Constitution, or the mischief intended to be remedied. By such a reference the general statute is not incorporated into or made a part of the special statute. The right is given, the duty declared, or burden imposed by the special statute, but the enforcement of the right or duty, and the final imposition of the burden are directed to be in the form, and by the procedure given by the other and general laws of the state. Reference is made to such laws, not to affect or qualify the substance of the legislation or vary the terms of the Act, but merely for the formal execution of the law.''

That court had occasion again to consider the provision in *People ex rel. Everson* v. *Lorillard*, 135 N. Y. 285, 31 N. E. 1011. In that case the litigation arose over an attempt of the city of New York to acquire certain lands by the right of emi-

nent domain under a statute passed for that purpose. The difficulty suggested with respect to the statute was that, while it authorized the city to acquire lands, it did not *in extenso* prescribe the procedure under which they were to be obtained, and for that purpose referred to another statute. In the course of its very able opinion the court said: "A constitutional provision intended to operate as a restraint upon the legislature, with respect to the language and forms of expression to be used in framing Acts of legislation, is not to be construed as to embrace cases not fairly within its general purpose or policy, or the evils which it was intended to correct, though they may be within its letter." And it said if such references may not be made, hundreds of the statutes of that state must be declared void. "To hold that all these Acts are void, as in conflict with this provision of the Constitution would be to disturb titles, promote litigation, and inflict widespread injury. . The worst evils that the framers of the provision could have had in view would be multiplied a hundred-fold by such a construction. A constitutional provision, like a statute, should not be so construed as to work a public mischief, unless the language used is of such explicit and unequivocal import as to leave no other course open to the court, and when the intent of the lawmakers is ascertained that must prevail over the letter of the law. (*Smith* v. *People,* 47 N. Y. 330; *People ex rel. Jackson* v. *Potter,* 47 N. Y. 375; *People ex rel. Killeen* v. *Angle,* 109 N. Y. 564, 17 N. E. 413.) * * * When a statute in itself and by its own language grants some power, confers some right, imposes some duty, or creates some burden or obligation, it is not in conflict with this constitutional provision because it refers to some other existing statute, general or local, for the purpose of pointing out the procedure, or some administrative detail, necessary for the execution of the power, the enforcement of the right, the proper performance of the duty, or the discharge of the burden or obligation. In this case the main object of the statute was to confer power upon the city to acquire land for a certain purpose, and that power is expressed in appropriate language, but

the procedure, by means of which the lands were to be condemned, and the administrative acts on the part of the city authorities, necessary in order to procure the money for the payment of the awards, are designated by reference to another statute." (*In re Union Ferry Co.*, 98 N. Y. 139; *People ex rel. New York El. Lines* v. *Squire,* 107 N. Y. 593, 1 Am. St. Rep. 893, 14 N. E. 820; *In re Buffalo Traction Co.,* 49 N. Y. Supp. 1052, 25 App. Div. 447; *Id.,* 155 N. Y. 700, 50 N. E. 1115; *Choate* v. *City of Buffalo,* 57 N. Y. Supp. 383, 39 App. Div. 379; *De Camp* v. *Hibernia Underground R. R. Co.,* 47 N. J. L. 43.)

The supreme court of Alabama has frequently had under consideration its constitutional provision, which is like ours, except as above stated. In *Ex parte Pollard,* 40 Ala. 77, it is said: "It was never intended by the Constitution that every law which would affect some previous statute of variant provisions on the same subject should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate. The constitutional provision reaches those cases where the Act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws by additions, or other alterations, which without the presence of the original are usually unintelligible. If a law is in itself complete and intelligible, and original in form, it does not fall within the meaning and spirit of the Constitution." (*People* v. *Mahaney,* 13 Mich. 481; *State* v. *Rogers,* 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; *Birmingham Union Ry. Co.* v. *Elyton Land Co.,* 114 Ala. 70, 21 South. 314; *Cobb* v. *Vary,* 120 Ala. 263, 24 South. 442; *Beeson* v. *Shaw,* 148 Ala. 544, 42 South. 611.)

In *Birmingham Union Ry. Co.* v. *Elyton Land Co., supra,* the Act considered was in this language: "Street railroad companies organized and incorporated under the laws of Alabama, may acquire by gift, purchase or condemnation, real estate in this state for the right of way of street railroads, a strip, tract, or parcel of land, not exceeding thirty feet in width, for the right

of way for said street railroads, and said street railroad com-
panies shall have the right to condemn and take possession of
said land, on payment to the owner thereof, a just compensa-
tion, in the same manner as now provided by law for taking
private property for railroads and other public uses, in Arti-
cle 2, Chapter 17, Title 2, Part 3, of the Code.'' The court
decided that the Act was not in conflict with the constitutional
provision, and refused to follow the *Bay Shell Road Case (Bay
Shell Road* v. *O'Donnell,* 87 Ala. 376, 6 South. 119), cited by
appellant. It did follow *State* v. *Rogers, supra,* in which the
court approved as constitutional an Act relieving the judge of
probate from official connection with the board of review of a
certain county, and devolving the duties upon another officer,
although the Act did not set out the original Act affected nor
republish it in any way. The court there said: ''All the pur-
poses of the present Act could doubtless have been accomplished
by an Act strictly and in form amendatory—by setting out the
existing statutes, amending and re-enacting them—but it is
obvious the amendatory Act would have been cumbersome, and
not more intelligible than is the present Act. Whether an
amendatory Act, or an original Act should be employed, was
matter of legislative judgment and discretion, which the courts
cannot control.''

The supreme court of Arkansas, in *Watkins* v. *Eureka Springs,*
49 Ark. 131, 4 S. W. 384, says: ''The second section adopts the
method of procedure provided for like cases where counties are
concerned without re-enacting the governing provisions. We
are not, however, prepared to assert that when a new right is
conferred or cause of action given, the provision of the Con-
stitution quoted requires the whole law governing the remedy
to be re-enacted in order to enable the courts to effect its en-
forcement. And we see no reason for refusing to apply the
same rule to special proceedings like this. To prevent that kind
of legislation could not have been within the mischief the pro-
vision was intended to remedy. It could not have been the in-
tention of the framers of the Constitution to put unreasonable

restraints upon the power of legislation, and thus unnecessarily embarrass the legislature in its work. (*Montgomery Assn.* v. *Robinson*, 69 Ala. 415; *Home Ins. Co.* v. *Tax Dist.*, 4 Lea (Tenn.), 644.)'' (*Scales* v. *State*, 47 Ark. 476, 58 Am. Rep. 768, 1 S. W. 769; *State* v. *Hunter*, 69 Ark. 548, 64 S. W. 885; *Porter* v. *Waterman*, 77 Ark. 383, 91 S. W. 754; *St. Louis & S. F. R. Co.* v. *Southwestern T. T. Co.*, 121 Fed. 276, 58 C. C. A. 198.)

In *Denver Circle Co.* v. *Nestor, supra,* the Act considered by the court provided that in all civil cases, both at law and in equity, the superior courts within the towns and cities for which they were created should have concurrent jurisdiction with the district court, and that the proceedings, practice and pleadings therein should be the same as in the latter court, and the court decided it not to be in contravention to the constitutional provision. (And see *Long* v. *Sullivan,* 21 Colo. 109, 40 Pac. 359; *Mill* v. *Brown*, 31 Utah, 473, 20 Am. St. Rep. 935, 88 Pac. 609; *Geer* v. *Board of Commissioners of Ouray Co.*, 97 Fed. 435, 38 C. C. A. 250.)

In *Geer* v. *Board of Commissioners, supra,* the circuit court of appeals, speaking through Judge Sanborn, says: ''The supreme court of Colorado holds that it was not the purpose or effect of this constitutional provision to require a re-enactment or republication of the provisions of the general laws of the state when reference is made to them in later statutes for a definition of rights, or for a specification of the lawful method of procedure under the subsequent laws.''

The authorities cited by appellants and respondent construing constitutional provisions somewhat similar to our own do not differ materially in principle; some adopt a stricter rule than do others. After a careful examination of all of these, taking into consideration the purpose of the Constitution framers and the evils they sought to avoid, we think the broader rule most consistent with the constitutional intent and most reasonable in its application.

A statute of this state cannot in terms be amended, revised, or extended by reference to its title only, but that a subsequent statute cannot be enacted affecting the provisions of a prior one, without re-enacting and publishing the prior one at length, does not follow. (*David* v. *Portland Water Committee,* 14 Or. 98, 12 Pac. 174; *People* v. *Mahaney,* 13 Mich. 481; *King* v. *Pony Gold Min. Co.,* 24 Mont. 470, 62 Pac. 783.)

While it is difficult to state a rule which will apply to every case, it is believed that it may be said safely that, if the Act under consideration in the particular case is original in form, if by its own language it "grants some power, confers some right, or creates some burden or obligation, it is not in conflict with the constitutional provision," although it may refer to some other existing statute "for the purpose of pointing out the procedure, or some administrative detail necessary for the execution of the power, the enforcement of the right, the proper performance of the duty, or the discharge of the burden or obligation."

To what extent does House Bill 249 conform to the foregoing rule? The bill is original in form. By its title, which is an indispensable part of the Act (*State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100), it gave to the legislators and others interested direct notice of its purpose and intent. The body of the Act is consistent with the title, and from these it is perfectly clear that by this Act the legislature intended to confer upon the foreign corporations named the right to exercise the power of eminent domain. It is therefore not within the evil intended to be prohibited by the constitutional provision. Does it by its own language grant some power or confer some right? It says that any of the corporations designated "may acquire real property"—how?—"as provided in the Code of Civil Procedure, Title VII, Part III," which is the chapter on eminent domain. It refers to that chapter for the purpose of pointing out the procedure, for the administrative details necessary for the execution of the power, and the enforcement of the right. The use of the words "as provided in the Code of Civil Procedure, Title VII, Part III," as they appear in this statute, is equivalent

to saying, by the exercise of the power of eminent domain. Indeed, the whole purpose of the Act is to designate the foreign corporations therein named as agents of the state for the exercise of that power.

. As was held in *Helena Power Transmission Co.* v. *Spratt, supra,* Title VII, Part III, of the Code of Civil Procedure, defines eminent domain, prescribes the purpose for which it may be exercised, and the estate which may be thereby acquired, together with the practice and procedure to be followed, but nowhere declares by whom such right can or shall be exercised. By section 526, *supra,* domestic corporations may exercise it— the language is that "a corporation may acquire real property as provided in the Code of Civil Procedure, Title VII, Part III." By House Bill 249, which was introduced and enacted immediately following the decision of this court that foreign corporations could not exercise the power of eminent domain, it was intended to put the foreign corporations named on the same footing as were domestic corporations in that respect. It seems apparent that the concluding words of section 1 of House Bill 249, "to the same extent, for the same purposes, and in the same manner, as corporations organized under the laws of this state," while intended to place domestic and foreign corporations designated upon an equality in the exercise of the right, were also intended as words of limitation, to the end that foreign corporations shall have no greater privileges than domestic ones.

It cannot be said that this is a model piece of legislation. The reference to the eminent domain Act by title only opens the Act to the charge that it touches upon the letter of the constitutional mandate. Yet, upon an analysis of the whole Act, taking into consideration its purpose and intent, it does reasonably appear that the legislature conferred upon certain foreign corporations the right to exercise the power of eminent domain—in other words, it designated them as agents of the state for that purpose. Anyhow, its invalidity is not made manifest beyond a reasonable doubt, and we would not be justified in declaring it void. (*In re O'Brien, supra,* and cases cited.)

Another objection lodged against House Bill 249 is that it violates section 26 of Article V of the Constitution. The reason stated is that it is a special law applicable to certain foreign corporations only, is therefore not uniform in its operation, and thus denies to other foreign corporations doing business in this state the equal protection of the laws. In answer to this contention it is enough to say that even if the objection were tenable—which we do not concede—appellants, who do not belong to the class discriminated against, may not avail themselves of it. (8 Cyc. 791; *Brown* v. *Ohio Valley Ry. Co.,* 79 Fed. 176; *Clark* v. *Kansas City,* 176 U. S. 114, 20 Sup. Ct. 284, 44 L. Ed. 392; *New York ex rel. Hatch* v. *Reardon,* 204 U. S. 152, 27 Sup. Ct. 188, 51 L. Ed. 415; *The Winnebago,* 205 U. S. 354, 27 Sup. Ct. 509, 51 L. Ed. 836.)

Appellants also allege that the Act in question violates that part of section 11, Article XV, of the state Constitution, which reads: " * * * And no company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same similar character created under the laws of the state." The argument upon this point is ingenious. It is said that when any foreign corporation has complied with the laws of this state relative thereto, it is allowed to do all business here which it is entitled to do under the laws of the state in which it was incorporated, and that this right to do business having been given upon a valid consideration, a contract ensues between this state and the foreign corporation which cannot afterward be violated by this state. And appellants say that the respondent subsequently may divert the property taken for a public use to an exclusively private use, as it is permitted to do under its articles of incorporation; the state can control a domestic corporation which does the like, but how can it prevent this act of perversion on the part of the respondent without violating the contract? The question thus presented is premature, but may be answered in the words of the supreme court.

of Washington in *State ex rel. Harris* v. *Olympia Light & Power Co.*, 46 Wash. 511, 90 Pac. 656 : ''While the exercise of this right of eminent domain must be guarded jealously, so that the private property of one person may not be taken for the private use of another, after all is said and done, the power to prevent property taken for a public use from being subsequently diverted to a private use must rest rather in the supervisory control of the state than in caution in permitting the exercise of the power.'' And, we add, we believe this state has full power to exercise the necessary control.

As to appellants' suggestions that because of this ''contract'' the state may not pass subsequent laws looking to the control of this respondent, a foreign corporation, which laws it may pass as to domestic corporations engaged in the same business, and thus the respondent will be permitted to do acts which the domestic corporations may not do, it is sufficient to say that under our Constitution the legislature may subject the respondent to the same liabilities, restrictions and duties as hereafter may be imposed upon domestic corporations of like character. (*Criswell* v. *Montana Central Ry. Co.*, 18 Mont. 167, 44 Pac. 525, 33 L. R. A. 554; *Lewis* v. *Northern Pac. Ry. Co.*, 36 Mont. 207, 92 Pac. 469; *American Smelting & Refining Co.* v. *Colorado ex rel. Lindsley*, 204 U. S. 103, 27 Sup. Ct. 198, 51 L. Ed. 293.) When a foreign corporation enters the state of Montana for the purpose of conducting business here, it does so only upon submitting itself to our laws, and it must recognize and obey the prohibitory force of the section of the Constitution last above set forth. While no greater burden may be put upon the respondent than is placed upon domestic corporations of similar character, yet it cannot occupy any higher ground than they do. (*Lewis* v. *Northern Pac. Ry. Co.*, *supra*.) Therefore it cannot be said that foreign corporations may be allowed to transact any business or do any act within the state of Montana which domestic corporations of a like character may not do.

3. Upon the hearing of the condemnation proceeding in the lower court appellants objected to the appointment of commissioners for the reason, among others, that as the land had been flooded they would be deprived of the right of having it examined by the commissioners. What, then, was the duty of the court when this objection was made? Plaintiff's complaint stated a cause of action, and all proceedings up to that time were conformable to the statute. Upon the evidence adduced the court rightly determined that the use for which the property was sought to be appropriated was a public one, and that the quantity of land sought was necessary. Having determined this, and being satisfied that the public interests required the taking of such lands, had the court any alternative, under subdivision 4 of section 2220 of the Code of Civil Procedure, but to appoint the commissioners? This statute says: "If the court or judge is satisfied that the public interests require the taking of such lands, it or he must make an order appointing three competent persons, resident in said county, commissioners to ascertain and determine the amount to be paid by the plaintiff to each owner or other person interested in such property, as damages, by reason of the appropriation of such property, and specify the time and place of the first meeting of such commissioners, and fixing their compensation."

It was conceded that the land was flooded at the time the court made its order appointing the commissioners, but whether the water could be withdrawn by respondent at the instance of the commissioners, or upon the order of the court at their request, so that they might examine it, the court was not advised by any evidence. While it is true that it was shown in the injunction proceeding that it was impossible to withdraw the water without a total destruction of the dam, that was long after the court made its order in the condemnation proceeding. Just before the court made its order appointing the commissioners in the condemnation proceeding, the appellant Augustus N. Spratt moved the court for an order staying the further prosecution of that action until the final hearing and determina-

tion of the·injunction proceeding, in which an application had
been made for an injunction to restrain the respondent from
further prosecuting the condemnation proceeding until the final
hearing and determination of the injunction proceeding. A
copy of the complaint and of the notice and application for an
injunction were attached to the motion as exhibits. It was
stipulated by the attorneys for the respective parties that the
injunction proceeding was then pending, and that the notice and
the application for an injunction had been served.

It now becomes necessary to consider the injunction proceed-
ing. The gist of that action was that the appellant Spratt was
the owner of certain land which the respondent was attempting
to acquire by the exercise of the right of eminent domain; that
the land had theretofore been taken possession of by the re-
spondent, and was then flooded without the consent or per-
mission of the appellant, and without any legal right or au-
thority whatsoever to do so; that respondent had made appli-
cation for an order appointing commissioners to assess the dam-
ages resulting from the taking, appropriation and flooding of
the´land,˙but had placed it in such condition and situation as
to make its examination by the commissioners impossible; that
the land was valuable for both agricultural and mining pur-
poses, and that in order to ascertain its value, and particularly
that for mining purposes, it would be necessary for the com-
missioners to make a personal examination of it; that to per-
mit the respondent to take the land and permanently flood the
same without first removing the water therefrom, would de-
prive the appellant of his said property without due process
of law, and deny to him the equal protection of the˙ laws, in
violation of the Constitution of the United States; and that
what would be just compensation to be paid the appellant for
the taking of the lands could not be determined without first
removing the water therefrom. The plaintiff prayed that a
writ of injunction issue directed to the defendant and its offi-
cers, requiring and commanding them to remove the water
from the land, and that in the meantime, and until judgment

be rendered upon the complaint, the respondent be enjoined and restrained from further prosecuting the condemnation proceeding. This complaint was filed on April 22d, and on that day the appellant Spratt served upon the respondent a notice that on the twenty-ninth day of April he would move the court for an order directing the issuance of a writ of injunction, requiring and commanding the respondent to desist and refrain from further prosecuting the condemnation proceeding until the final hearing and determination of the injunction proceeding, and respondent was notified that "said motion and application will be based upon the complaint herein, and oral testimony to be introduced in support of the allegations thereof."

Under this state of facts the court in the condemnation proceeding did not err in denying the motion for an order staying the further prosecution of that action. The court, Judge Clements presiding, was asked to stay the further prosecution of the condemnation proceeding until the same court, Judge Bach presiding, could pass upon the question of issuing an injunction restraining the prosecution of the condemnation proceeding. This Judge Bach could not do; such action would have been in direct conflict with section 4463 of the Civil Code, which provides: "An injunction cannot be granted: 1. To stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded, unless such restraint is necessary to prevent a multiplicity of such proceedings." It is not even suggested that restraint was necessary to prevent a multiplicity of proceedings. From the foregoing it also appears, without further comment, that the court was right in denying the application for the injunction.

Having denied the motion for a stay of proceedings in the condemnation proceeding, the court was then confronted with the question as to whether it was permissible for it to appoint the commissioners in the face of the fact that the respondent was a trespasser when the condemnation proceeding was begun, and we think the court resolved it correctly. It may be well to remember that the respondent was not a willful tres-

passer.   It took possession of the lands sought to be condemned under an order of the district court of Lewis and Clark county, which was valid until it was reversed, and that after respondent had paid into court the just compensation determined by the commissioners in the first proceeding.   Because of the reversal of that order by this court the respondent became a trespasser.   We hold that it does not necessarily follow that because one is a trespasser he may not invoke the power of eminent domain.   It is the general rule that he may invoke that power even though he be a trespasser.   He is not deprived of his right to condemn because he has committed a trespass or is wrongfully in possession of the land sought to be condemned.   (*Ellinghouse* v. *Taylor,* 19 Mont. 462, 48 Pac. 757; *Jacksonville, Tampa & Key West Ry. Co.* v. *Adams,* 28 Fla. 631, 10 South. 465, 14 L. R. A. 535; *Samish River Boom Co.* v. *Union Boom Co.,* 32 Wash. 586, 73 Pac. 670; 2 Lewis on Eminent Domain, sec. 507.)   And that this rule of action was contemplated by our legislature, note its declaration in section 2229 of the Code of Civil Procedure, which provides in part: "At any time after the report and assessment of damages of the commissioners has been made and filed in the court, and either before or after appeal from such assessment or from any other order or judgment in the proceedings, the court or any judge thereof at chambers, upon application of the plaintiff, shall have power to make an order that upon payment into court for the defendant entitled thereto of the amount of damages assessed, either by the commissioners, or by the jury, as the case may be, the plaintiff be authorized, if already in possession of the property of such defendant sought to be appropriated, to continue in such possession."   Appellants had a legal remedy for all damages done them by respondent because of the trespass.

We have no doubt that the court followed its manifest duty in appointing the commissioners; we think it had no alternative upon the facts before it.   We are inclined to the belief that the court would have been compelled to appoint the commis-

sioners under the statute in any event, thus allowing the objection that the commissioners could not examine the land to be raised by the commissioners themselves, or later by any party to the action who should be dissatisfied with the award.    However, conceding appellants' argument, that a court should not appoint commissioners to do that which it is impossible to do, still the court was right, for the record in the condemnation proceeding does not bear out the contention that it was apparent to the court that the commissioners could not examine the lands in controversy.    The court was passing upon the evidence before it at that time, and it could not assume without evidence that the water could not and would not be withdrawn at the commissioners' request.    It is the commissioners' duty to examine the lands sought to be condemned, hear the allegations and evidence of all parties interested, and ascertain and assess the damages done to the persons whose lands are sought to be appropriated.    (Code Civ. Proc., sec. 2221.)

Suppose, now, in a given case, that the commissioners could not or did not examine the lands.    Then they did not do all the statute requires.    Or suppose that they were bribed or otherwise improperly influenced by the adverse party, or were prevented by acts of the adverse party from doing their duty.    Is there no remedy for their malfeasance or nonfeasance?    In our opinion the injured party has two remedies: he may appeal to the district court, as provided in section 2224 of the Code of Civil Procedure, or he may move to set aside the report of the commissioners.    (Code Civ. Proc., sec. 2231; *Pueblo & Arkansas Valley R. R. Co.* v. *Rudd*, 5 Colo. 270; and, generally, note discussion by Hawley, J., in *Douglass* v. *Byrnes*, 63 Fed. 16.) Whether appellants invoked or attempted to invoke either of these remedies we do not know.    Upon the coming in of the report, if the appellants had made it appear to the court that the commissioners had not examined, or could not examine, the lands by reason of the act of the respondent in flooding it, it would then have been incumbent upon the court to set aside the report; and also to dismiss the proceeding, unless the re-

spondent at once offered to place the land in such condition that the commissioners could examine it, and proceeded promptly in compliance with the offer.

Under the conditions apparent in the records before us, appellants may not say that their property is not taken by due process of law. In *Chauvin* v. *Valiton,* 8 Mont. 451, 20 Pac. 658, 3 L. R. A. 194, Chief Justice McConnell quotes the following from the opinion of the supreme court of the United States in *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. Ed. 616: "That whenever by the laws of a state, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole state, or ·of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person, or such proceedings in regard to the property as are appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." (*State* v. *Brett,* 16 Mont. 360, 40 Pac. 873; *McMillan* v. *City of Butte,* 30 Mont. 220, 76 Pac. 203; *Long Island Water Supply Co.* v. *City of Brooklyn,* 166 U. S. 685, 17 Sup. Ct. 718, 41 L. Ed. 1165.)

Nor do we think the court erred in permitting respondent "to continue in possession of the property sought to be condemned, and to use and possess the same during the pendency of, and until the final conclusion of, the litigation, and [directing] that all actions and proceedings against the respondent on account of said order be stayed until such time." The power to do this is specifically given the court by section 2229 of the Code of Civil Procedure, after the report and assessment of the commissioners has been made and filed in the court, and after the amount of damages assessed by the commissioners or jury has been paid into court for the owner of the property.

The records do not show that the court was guilty of an abuse of judicial discretion in making the order.

It follows that the several orders appealed from should be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.